THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
ROY L. McCOY, Sr., Defendant-Appellee.

Second District   No. 84—0615

Opinion filed August 15, 1985.

T. Jordan Gallagher, State's Attorney, of Sycamore (John X. Breslin and Raymond L. Beck, both of State's Attorneys Appellate Service Commission, of Ottawa, and Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

Robert E. Haeger, of Dundee, and Willard B. Widerberg, of Elgin, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Roy L. McCoy, Sr., was charged with two counts of theft in excess of $300 (Ill. Rev. Stat. 1983, ch. 38, pars. 16—1(a)(1) and 16—1(d)(1)). Defendant filed a motion to quash the search warrant, which the trial court granted, and the State appeals pursuant to Supreme Court Rule 604(a)(1) (87 Ill. 2d R. 604(a)(1)).

The State seeks reversal contending that under the totality of the circumstances there was probable cause for issuance of the search warrant. Alternatively, the State argues that assuming there was no probable cause, the "good-faith" exception to the exclusionary rule, as adopted in *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, is applicable under the facts present here.

On December 29, 1983, De Kalb County sheriff's detective Richard Kennett and a private citizen, Robert Havenar, each executed a complaint for search warrant to search the person of Roy McCoy and a

brown two-story wood-framed house located at the northeast corner of Eychaner Road and the first north-south road east of Esmond Road. The complaints requested the seizure of a blue steel revolver, a sawed-off shotgun, and numerous long guns. It was alleged that these had been used in the commission of, or which constituted evidence of, the offense of possession of a firearm without a firearm owner's identification card.

Detective Kennett stated in his complaint that McCoy was the sole resident of the house previously described, that McCoy did not possess a valid Illinois firearm owner's identification card, and that in 1979 he participated in a search of McCoy's home pursuant to a warrant and discovered a variety of firearms which resulted in McCoy's conviction for a Federal firearm's violation. Kennett further stated that McCoy was placed on Federal probation for five years, and a condition of his probation was that he not possess any firearms.

Robert Havenar stated in his complaint that he knew McCoy through his job working at an automobile garage. Further, in March of 1983, he observed McCoy in his van with two long guns and one sawed-off shotgun. He also observed a blue steel revolver in McCoy's belt. The next day, Havenar saw the guns in the same van.

Havenar also stated that he observed McCoy with the blue steel revolver on three more occasions, including one day in October of 1983 when McCoy showed Havenar the revolver while stating that he had ways to take care of people who squealed on him. The last time Havenar stated he saw the resolver was within 30 days of the execution of this complaint.

In addition to the statements concerning the observation of the guns, Havenar included in the complaint that during the past summer, he heard McCoy express fear about having his gun collection stolen and indicated that this fear was the reason he purchased guard dogs. McCoy also told Havenar to inform him any time Havenar had any guns to sell or knew of any guns being sold. Havenar included statements against his own penal interests in the complaint. At the time Havenar executed the complaint, he was under arrest on a burglary charge.

A search warrant was issued on December 29, 1983, based upon both complaints. The search warrant was issued to search the person of Roy McCoy and his home, and authorized seizure of a blue steel revolver, a sawed-off shotgun, and numerous long guns as evidence of the offense of possession of a firearm without a firearm owner's identification card. It was executed the same day. The inventory of articles of the items seized during this search included one .45-caliber ma-

chine gun clip, one green sock with .14-caliber ammunition in it, one box of .25-caliber automatic ammunition found in the kitchen stove, one cleaning kit for firearms, a box of gambling equipment (pull tabs), and a paper showing ownership. None of the items listed in the search warrant were located.

During the search on December 29, 1983, Detective Kennett observed a number of items later identified as stolen property. On December 30, 1983, Detective Kennett executed a new complaint for search warrant for the same premises as was searched the previous day alleging the offense of theft (possession of stolen property). A search warrant was issued and executed on December 30, 1983. A number of reportedly stolen items were seized and inventoried. A warrant for defendant's arrest was issued on January 4, 1984, and executed on January 20, 1984.

On April 13, 1984, the trial court heard arguments from both parties on defendant's motion to quash the December 29, 1983, search warrant. On June 5, 1984, the trial judge filed a letter of opinion which set forth the reasoning underlying his decision to grant defendant's motion to quash. The judge noted that three facts were of particular significance. First, the last definite time Havenar observed the weapons was October of 1983. Second, no weapons were ever alleged to have been observed in McCoy's home. Third, no weapons were discovered during the search pursuant to the first warrant.

The State contends on appeal that there was probable cause to issue a search warrant for defendant's home. Relying on *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, it argues that under the totality of the circumstances there was a fair probability that evidence of a crime would be found in defendant's home. The defendant responds that the trial court was correct in stating that the alleged facts, as set forth in the December 29 complaints for search warrants, were too tenuous to support the issuance of a search warrant. Also relying on *Gates*, he argues that there were not enough facts set forth in the complaints to establish that his house was the proper locus of the search, that the information in the complaint was stale, and that there were insufficient facts alleged that he had committed a crime.

■ Probable cause for the issuance of a search warrant exists if facts set forth in an affidavit would cause a reasonable person to believe a crime has been committed and evidence of that crime is in the place to be searched. (*People v. Stewart* (1984), 104 Ill. 2d 463, 476, 473 N.E.2d 1227.) The Illinois Supreme Court has decided that a detached judicial officer is justified in issuing a search warrant if proba-

ble cause exists. The decision to issue such a warrant is to be based on information contained in sworn statements or affidavits that are presented to the issuing judge. (*People v. Tisler* (1984), 103 Ill. 2d 226, 236, 469 N.E.2d 147.) The test for probable cause now relied on by the Illinois Supreme Court was first set forth in *Illinois v. Gates* where the United States Supreme Court stated:

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.

█▌█ The Supreme Court later clarified its position in *Gates* and expressly rejected the "two-pronged test" established in *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, instead reaffirming the totality of circumstances analysis enunciated in *Gates*. (*Massachusetts v. Upton* (1984), 466 U.S. 727, 80 L. Ed. 2d 721, 104 S. Ct. 2085.) The Illinois Supreme Court also abandoned the "two-pronged test" of *Aguilar* and *Spinelli*. (*People v. Tisler* (1984), 103 Ill. 2d 226, 246, 469 N.E.2d 147.) While the reliability and the basis of knowledge are still examined, they are examined as a whole along with the other facts in the complaint. (*People v. Jones* (1985), 105 Ill. 2d 342, 356-57, 475 N.E.2d 832.) Probable cause is not to be a determination by a legal technician but instead by a reasonable and prudent person dealing with the practical considerations of every day life. (*People v. Free* (1983), 94 Ill. 2d 378, 400, 447 N.E.2d 218.) Thus, the issuing judge's determination of probable cause for a search warrant should be paid great deference by a trial judge. (*People v. Gacy* (1984), 103 Ill. 2d 1, 21, 468 N.E.2d 1171.) "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." (*People v. Stewart* (1984), 104 Ill. 2d 463, 477, 473 N.E.2d 1227, citing *United States v. Ventresca* (1965), 380 U.S. 102, 109, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746.) A reviewing court, however, will not disturb a trial court's ruling on a motion to quash a warrant or suppress evi-

dence unless that ruling is manifestly erroneous. *People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766.

■ Initially, it should be pointed out that this is not a case involving an anonymous informant who supplies hearsay information to the affiant, but is a cause involving an identified informant who presented his own affidavit to the issuing judge. An affidavit in support of a search warrant is presumed valid. (*People v. Martine* (1985), 106 Ill. 2d 429, 435, 478 N.E.2d 262, citing *Franks v. Delaware* (1978), 438 U.S. 154, 171, 57 L. Ed. 2d 667, 682, 98 S. Ct. 2674, 2684.) This presumption of veracity applies to a nongovernmental affiant as well as a governmental affiant. (*People v. Born* (1983), 113 Ill. App. 3d 449, 455, 447 N.E.2d 426.) A defendant may attack the veracity of an affidavit supporting a search warrant thus mandating an evidentiary hearing, but to do so, a defendant must first make a substantial preliminary showing that false statements were included in the affidavit knowingly and intentionally, or with reckless disregard for the truth. (*People v. Born* (1983), 113 Ill. App. 3d 449, 455-56, 447 N.E.2d 426; see also *People v. Verdone* (1985), 107 Ill. 2d 25, 30, 479 N.E.2d 925.) Absent any attack by the defendant on the veracity of the statements in the affidavit, the statements must be viewed as true for the purposes of appeal. (*People v. Gardner* (1984), 121 Ill. App. 3d 464, 467, 459 N.E.2d 676.) A review of the record reveals that the defendant has not challenged the truthfulness of Havenar's affidavit. In addition, Havenar was an eyewitness to defendant's possession of the guns. He also made a declaration against his penal interest. Both of these facts assist in establishing his reliability. *People v. Hammers* (1976), 35 Ill. App. 3d 498, 502-04, 341 N.E.2d 471.

■ The question of the affiant's, Havenar, basis of knowledge is resolved by the fact that he saw defendant in possession of the guns. In the absence of a challenge to the truthfulness of the affidavit, it is presumed to be truthful. *People v. Gardner* (1984), 121 Ill. App. 3d 464, 467, 459 N.E.2d 676.

■ The primary focus of this appeal concerns three more specific questions: whether the recency of the information justified the issuance of the warrant; whether there was enough information included in the affidavit for the issuing judge to reasonably conclude that evidence of the crime would be located in defendant's home; and whether the fact that no guns were located at the house has any effect on the review of the issuance of a search warrant. The third question is easily resolved because whether the items were found or were not found is irrelevant in the determination of probable cause. Probable cause for the issuance of a search warrant is based on infor-

mation known to the court and officers when the warrant is applied for, not after it is executed. *People v. Free* (1983), 94 Ill. 2d 378, 400, 447 N.E.2d 218.

The next question is whether enough facts were alleged in the complaints for search warrant to adequately establish a fair probability that evidence of a crime could be found in defendant's home despite the fact that there was no statement that any guns were ever seen in defendant's home.

■ To determine probable cause, a sufficient nexus between the criminal offense, the items to be seized, and the place to be searched must be established. (1 W. LaFave, Search & Seizure sec. 3.7(d), at 704 (1978).) When there is no direct information to establish this nexus, reasonable inferences may be entertained to create this nexus. (1 W. LaFave, Search & Seizure sec. 3.7(d), at 706 (1978).) Illinois courts follow this principle. For example, in *People v. Hammers* (1976), 35 Ill. App. 3d 498, 504, 341 N.E.2d 471, the court held that if the complaint was sufficient to establish probable cause that the defendant had committed an offense, it would be reasonable for an issuing judge to infer that the weapon used in committing the offense might be in the defendant's home. Further, in *People v. Ruopp* (1978), 61 Ill. App. 3d 140, 142, 377 N.E.2d 1317, the court found it reasonable for an issuing judge to conclude that the clothes and weapon used by a person during two armed robberies might be found at the person's place of residence.

■ In this case, there were no facts alleged indicating that the guns were seen in the place searched. The facts in the complaint, however, could lead to reasonable inferences that the guns were located in defendant's home. Guns were seen in defendant's possession on numerous occasions. Defendant also stated that he was worried about his gun collection being stolen from his home. Further, defendant said to Havenar that he would buy any guns Havenar came into possession of. While the mere fact that a person was seen possessing a gun in one place does not necessarily lead to an inference that the gun would be at home, the instances of possession coupled with defendant's statements could lead a reasonable person to believe that the guns were secluded in defendant's home. In addition, the facts that defendant stored guns in his home before, and that defendant was convicted of a Federal firearms violation and is currently on Federal probation, solidify this inference that defendant possessed firearms in violation of the law. Prior arrests and convictions may properly be considered under certain circumstances in determining probable cause. *People v. Gacy* (1984), 103 Ill. 2d 1, 23, 468 N.E.2d

1171.

Under all these circumstances, it is probable that guns would be located at defendant's residence even though there was a lack of evidence that they actually had been seen there. (See *People v. Miller* (1983), 115 Ill. App. 3d 592, 598-600, 450 N.E.2d 767.) We conclude that sufficient facts existed to cause a reasonable person to believe guns would be found in defendant's residence.

■ The third question presented is if the facts alleged establish probable cause to search defendant's home for the listed guns, whether the time which had elapsed between the facts alleged and the issuance of the warrant caused the information to be "stale" and insufficient to establish probable cause. In Illinois, there is no set rule as to when the passage of time extinguishes probable cause. (*People v. Evans* (1978), 57 Ill. App.3 d 1044, 1050, 373 N.E.2d 524.) "Whether or not [the complaint for search warrant] is too remote must depend upon all the facts and circumstances of the particular case." (*People v. Dolgin* (1953), 415 Ill. 434, 442, 114 N.E.2d 389.) The only bearing that passage of time of itself has upon the question is its effect upon the existence of probable cause. (*People v. Montgomery* (1963), 27 Ill. 2d 404, 405, 189 N.E.2d 327.) It has been stated that the continuity of the offense is the single most important factor in the determination of whether the probable cause is valid or stale. 1 W. LaFave, Search & Seizure sec. 3.7(a), at 686 (1978); see *People v. Dolgin* (1953), 415 Ill. 434, 441-42, 114 N.E.2d 389.

In this case, the complaints establish a continuing offense. The time lapse between the second and the third viewings of the revolver (May and October) was about five months. The next time defendant was seen with the revolver was about two months later. Defendant was also seen with the revolver within 30 days prior to the issuance of the warrant. Under these circumstances, it appears that defendant was engaged in a continuing course of criminal conduct, and thus the information concerning of the revolver underlying the warrant was not stale. See *People v. Dolgin* (1953), 415 Ill. 434, 442, 114 N.E.2d 389.

■ Even assuming that the information concerning the shotgun and long guns was stale, the question becomes whether this invalidates the whole warrant. While Illinois courts have not specifically dealt with this question, it is generally held that partial invalidity of a search warrant does not taint the whole warrant. (See *People v. Helle-meyer* (1975), 28 Ill. App.3 d 491, 497-98, 323 N.E.2d 626.) A court will just sever the tainted part from the rest of the warrant. (2 W. LaFave, Search & Seizure sec. 4.6(f), at 111-12 (1978).) The only ap-

parent condition is that the scope of the search pursuant to a severed warrant must be limited to only the untainted items. (*United States v. Freeman* (5th Cir. 1982), 685 F.2d 942, 953.) In this case, a search for a revolver would necessarily encompass areas in which shotguns and long guns could be found. There is nothing in this record that the officers in executing the search warrant did not act within the scope of the warrant.

██ ██ Defendant also contends that the fact set forth in the December 29 complaints for search warrants were insufficient to establish probable cause that he had committed a crime. In support of this contention, defendant argues that while it was alleged that he possessed certain firearms on various occasions, there were no specific allegations that he did not possess the required owner's firearm identification card on those occasions. This argument has no merit. Kennett's affidavit sets forth that a check of the records of the State of Illinois reveals defendant did not have an owner's firearm identification card, and that defendant was still serving a Federal probation term. While the precise date of the record check is not indicated, it is reasonable to infer from the facts that defendant did not have a card on the date the affidavit was signed and on the prior occasions.

Accordingly, considering the totality of the circumstances, the decision of the trial court quashing the search warrant is manifestly erroneous and must be reversed.

In view of the foregoing, it is unnecessary for us to consider the State's alternative argument that the "good faith" exception to the exclusionary rule is applicable under the facts presented in this case.

Reversed and remanded.

LINDBERG and UNVERZAGT, JJ., concur.