THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ALSHAWENTUS BECK *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—98—0874

Opinion filed June 11, 1999.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Barbara L. Jones, Assistant State's Attorneys, of counsel), for the People.

Daniel H. Wolff, of Turner & Wolff, and Michael A. Braun, of Braun & Rivkin, Ltd., both of Chicago, for appellee Alshawentus Beck.

No brief filed for other appellee.

JUSTICE GREIMAN delivered the opinion of the court:

The State appeals from the circuit court's order granting the motion of defendant Alshawentus Beck and codefendant Charles Riley to quash a search warrant and suppress the evidence obtained pursuant to it. The State contends that the affidavit supporting the search warrant application established probable cause to support the warrant issued. Defendant and codefendant were each charged with possession of a controlled substance with intent to deliver. Defendant filed a response to the State's appeal, but codefendant did not.

On July 18, 1997, Internal Revenue Service (IRS) Special Agent Christopher Carlson applied in federal court for a warrant to search two residential properties: the residence and attached garage at 2928 South 9th Avenue in Broadview, Illinois, and apartment 410 at 3660 North Lake Shore Drive in Chicago. In his supporting affidavit, Carlson noted his eight years as a special agent involved in criminal investigations, including investigations of money laundering. Carlson stated that the information contained in the affidavit was based upon his personal knowledge, interviews with witnesses, information obtained through a wiretap investigation, information received from other law enforcement officers, a review of documents, and information acquired though his training and experience. Information also came from two confidential informants (CI).

The first CI had direct knowledge of defendant's street gang's sales of narcotics. This CI provided information to a gang specialist from the Chicago police department, Michael Cronin, in July 1997. This information was corroborated through conversations with other members and associates of the gang. The second CI, a friend of defendant, knew about the two residences sought to be searched. Carlson set forth a general description of the two properties.

According to Carlson's affidavit, federal and local law enforcement personnel conducted a joint investigation into the involvement of defendant's street gang in narcotics trafficking and money laundering

activities. The investigation began in 1995 and revealed that members of the gang had been involved in the sale of crack cocaine and heroin near several Chicago public housing projects. In April 1997, a federal grand jury indicted three of the gang's leaders for violating federal narcotics laws and for operating a criminal enterprise. Federal money laundering charges were subsequently added to the indictment and the case was pending. This indictment requested the forfeiture of jewelry, properties, bank accounts, vehicles, and $6 million, representing the proceeds from the gang's narcotics sales.

The affidavit also indicated that Officer Cronin learned that the gang operated a drug operation in the 3800 block of West Maypole Avenue in Chicago. The first CI identified defendant as the gang member in charge of that operation. On July 12, 1997, Cronin spoke with a person who admitted working for defendant's drug operation. This person identified a picture of defendant. These individuals also told Cronin that defendant drove a red Jeep Cherokee without license plates and he owned a gold-colored Lexus, a Chevrolet Tahoe Truck, and a Pontiac Bonneville.

Defendant's suspected alias was Victor Nosyke. Secretary of State records indicate that defendant's driver's license includes a specific height and weight and a residence in Hillside, Illinois. An Illinois driver's license was issued to Nosyke on July 1, 1996, with identical height and weight information but a different birthdate than defendant's.

Secretary of State records also indicate that in 1996 Nosyke and Lasonia Armstrong registered a 1997 Pontiac in their names at a Chicago address. Nosyke was also listed as the owner of a 1995 Lexus at an Oak Park address. Police records show that in June 1997, Armstrong obtained an order of protection against defendant. One of Armstrong's addresses listed on the order was the same address provided for Nosyke's registration of the 1995 Lexus in Oak Park. The second CI informed Cronin that Armstrong was defendant's girlfriend.

In August 1995, Chicago police officers observed the driver of a Chevrolet Monte Carlo throw a handgun from the window of his vehicle before stopping in an alley behind the 3800 block of West Maypole. The driver fled, but the officers recovered $3,550 from the vehicle's trunk. According to Secretary of State records, that vehicle was registered in defendant's name at the same Hillside address listed for his driver's license. Defendant was arrested two days later at 3859 West Maypole and in July 1996, he pleaded guilty to unlawful possession of a firearm.

In March 1996, police officers observed defendant standing on the street near 3859 West Maypole. As the officers approached, defendant

fled into a building, dropping two blue plastic bags that contained a white rock-like substance suspected to be cocaine. A criminal case relating to these events was pending.

In June 1996, police officers observed three men sitting in a parked car at 3850 West Maypole. The officers then saw another man who appeared to be conducting narcotics transactions walk up to the vehicle and hand one of the occupants some money. The officers approached the car and conducted a protective search of the three men. The officers found $1,400 on one of the men. This man told officers his identification was in his Jeep parked across the street. Officers recovered two Illinois driver's licenses from the Jeep with the man's photograph, one in defendant's name and one in the name of Victor Nosyke. The officers also recovered $1,720 from defendant's Jeep. Carlson indicated that he believed this Jeep was not the same Jeep previously mentioned that lacked license plates. When asked about the cash, defendant could not produce evidence of employment or income.

In July 1996, First National Bank of Chicago filed a suspected fraud report regarding this Jeep from which the police obtained defendant's multiple driver's licenses. The report indicated that defendant purchased the vehicle on May 8, 1996, making an $8,700 downpayment. He had obtained a loan in the amount of $30,070, but provided a fictitious social security number. The loan payments were timely.

IRS records indicated that defendant had not filed a federal tax return since 1993, when he reported income slightly over $4,000. Employers paid defendant over $4,000 in 1993, over $6,000 in 1994, and $46 in 1995. No employer reported for him in 1996.

Cook County property records indicate that a person using the name Victor Nosyke purchased the property at 2928 South 9th Avenue in Broadview for $123,000 on April 1, 1997, and obtained a mortgage for $121,370. Monthly payments on the mortgage would be approximately $850 per month. According to the second CI, defendant lived in the Broadview home and used the name of Victor Nosyke to acquire the home.

On July 9, 1999, security personnel at 3660 North Lake Shore Drive recognized defendant's photograph as someone who maintained an apartment in the building. Victor Nosyke was listed as the tenant in apartment 410. The second CI told Cronin that defendant rented apartment 410 in the name of Victor Nosyke. Rent on such an apartment would be at least $800 per month. Carlson saw defendant's Chevrolet truck parked near the Lake Shore Drive address on July 14, 1997.

On July 14, 1997, Cronin saw defendant driving a red Jeep Chero-

kee near 3800 West Maypole Avenue. Carlson indicated that this was the Jeep mentioned before that had not displayed license plates. On July 14, 1997, it then displayed license plates. Cronin learned through Secretary of State records that this vehicle was leased in the name of Victor Nosyke. Surveillance officers also saw this same Jeep parked in the Broadview property driveway four times in July 1997.

Carlson stated that, based upon his training and experience, drug traffickers frequently put their assets in other names in order to conceal true ownership and to avoid detection of illicit income by the IRS. He also stated that drug traffickers ordinarily keep drug records, ledgers and tally sheets, scales, weapons, bulletproof vests, jewelry, cash, furs, and safe deposit box keys in places within their control. They frequently keep financial documents such as vehicle financing papers and real estate documents at their residences rather than any formal office. Further, drug traffickers often use multiple addresses under aliases in order to avoid detection.

Based on the foregoing, Carlson determined there was probable cause to believe that defendant was engaged in narcotics trafficking activities, that he was using the alias Victor Nosyke, and that he maintained the Broadview and Lake Shore Drive residences in order to carry out these activities. Carlson further stated that he had probable cause to believe that the fruits and instrumentalities of narcotics activity and money laundering, including proof of residence, evidence of income and expenditures, evidence of lack of legitimate income, and other records would be located at these addresses.

Attached to the affidavit was a list of property to be seized and a handwritten list of property seized on July 21, 1997, pursuant to the warrant. The list of property seized included suspected rock cocaine and various documents.

In granting the motion to quash the search warrant, the circuit court stated that it failed to find any information in the affidavit to indicate that criminal activity had taken place inside any of the residences, only that records of criminality might be kept there. The court also found that much of the collected information about defendant was stale. The court held that this did not satisfy the probable cause requirement.

■ The State contends that the circuit court's decision to quash the search warrant was improper because there was probable cause to support a finding that defendant was engaged in an ongoing money laundering and drug trafficking operation. Whether probable cause exists for issuance of a search warrant depends upon whether the totality of circumstances and facts known to the affiant was sufficient to warrant a person of reasonable caution to believe that the law was

violated and that evidence of the violation was on the premises to be searched. *People v. Griffin*, 178 Ill. 2d 65, 77 (1997). This determination is made on a case-by-case basis. *People v. Thompkins*, 121 Ill. 2d 401, 435 (1988). It is the probability of criminal activity rather than proof beyond a reasonable doubt that is the standard for determining the existence of probable cause to support issuance of a search warrant. *People v. Franklin*, 159 Ill. App. 3d 923, 929 (1987). The sufficiency of an affidavit in support of a search warrant rests upon whether, when considered as a whole, it adequately establishes that there is a fair probability that evidence of a crime would be found in a particular place. *People v. Jones*, 105 Ill. 2d 342, 357 (1985).

Because the case involves the application of law to uncontroverted facts, we review the matter *de novo*. *People v. Hancock*, 301 Ill. App. 3d 786, 788 (1998), citing *People v. Krueger*, 175 Ill. 2d 60, 64 (1996).

The circuit court essentially quashed the search warrant because it found no "nexus" existed between defendant's alleged criminal activity and his home, and information supporting the affidavit was stale. The affidavit contained no facts to indicate that defendant kept records of his criminal enterprise at home. However, courts do not always require such facts to support that inference. "Rather, it is commonly held that this gap can be filled merely on the basis of the affiant-officer's experience that drug dealers ordinarily keep their supply, records and monetary profits at home." 2 W. LaFave, Search & Seizure § 3.7(d), at 379 (3d ed. 1996). In *United States v. Emmons*, 24 F.3d 1210, 1215 (10th Cir. 1994), an affidavit was held to be sufficient which asserted the officer's training and experience were his basis for knowing that narcotics distributors kept records, packaging, and assets at their homes. But see *United States v. Rios*, 881 F. Supp. 772 (D. Conn. 1995) (officer's general statements based on training and experience alone do not constitute a "substantial basis" for the issuance of a warrant). In *United States. v. Restrepo*, 994 F.2d 173, 187-89 (5th Cir. 1993), the court found probable cause to search a drug dealer's residence even though the affidavit did not describe any drug activity at the residence. The affiant/officer in *Restrepo* stated, among other things, that drug traffickers maintained records relating to drug activity in their homes. See also *United States v. Hill*, 953 F.2d 452, 459-60 (9th Cir 1991). In *United States v. Lamon*, 930 F.2d 1183, 1189 (7th Cir. 1991), the court stated that an issuing magistrate is entitled to rely on the experience of officers "whose affidavits explain the significance of specific types of information."

■ To determine probable cause, a sufficient nexus between a criminal offense, the items to be seized, and the place to be searched must be established. *People v. McCoy*, 135 Ill. App. 3d 1059, 1066

(1985), citing 1 W. LaFave, Search & Seizure § 3.7(d), at 704 (1978). When there is no direct information to establish a nexus, reasonable inferences may be entertained to create the nexus. *McCoy*, 135 Ill. App. 3d at 1066. A judge asked to issue a search warrant may draw reasonable inferences from the material supplied, and although it may not be easy to determine when an affidavit demonstrates probable cause, doubtful or marginal cases are largely resolved by resorting to the preference accorded to warrants. *Hancock*, 301 Ill. App. 3d at 792, quoting *People v. Cooke*, 299 Ill. App. 3d 273, 278 (1998).

■ A person commits the crime of money laundering when he conducts a financial transaction knowing that the property involved in the transaction represents the proceeds of some unlawful activity and knowing that the transaction is designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the unlawful activity. 18 U.S.C.A. § 1956(a)(1)(B)(i) (West Supp. 1999); 720 ILCS 5/29B—1 (West 1996). Based on the totality of the information provided, it appears that the issuing judge drew reasonable inferences when the judge found probable cause here. The affidavit appears sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of the violation would be located in the premises sought to be searched.

■ "Staleness" refers to the amount of time that has elapsed between the facts alleged in the affidavit in support of the search warrant and issuance of the warrant. See *Sgro v. United States*, 287 U.S. 206, 210-12, 77 L. Ed. 260, 262-63, 53 S. Ct. 138, 140-41 (1932). Where an affidavit indicates that a defendant has been involved in a long-term drug trafficking business, an affidavit has been found sufficient when coupled with other information, including observation of defendant with cocaine a few months earlier. *United States v. Cannon*, 29 F.3d 472, 478 (9th Cir. 1994); see also *United States v. Robins*, 978 F.2d 881, 892 (5th Cir. 1992) (staleness must be determined on the facts of each case, but six months not too long where large-scale marijuana trafficking alleged); *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1566 (9th Cir. 1989) (information not stale even though the most recent event was a year earlier because affidavit detailed many instances of defendant's involvement with drugs in the prior decade).

The single most important factor in determining whether probable cause is valid or stale is whether the defendant was engaged in a continuing course of criminal conduct. *Hancock*, 301 Ill. App. 3d at 793, quoting *People v. Rehkopf*, 153 Ill. App. 3d 819, 823 (1987); see also *People v. Sellers*, 237 Ill. App. 3d 545, 549 (1992) (15-day delay from time contraband first observed and time warrant issued and executed not unreasonable where it was alleged that defendant had been

selling drugs for the past six years and it was reasonable to assume this was an ongoing process and items would still be located in defendant's residence).

The facts presented in the affidavit indicate an ongoing course of criminal conduct. In 1996, defendant pleaded guilty to unlawful possession of a firearm, was charged with possession of cocaine, and was stopped by police in an area of narcotics activity and found in possession of two driver's licenses bearing his picture. An investigation uncovered defendant's alias, his residences and vehicles, and tax and employment history. Cronin and Carlson learned several important items of information in July of 1997, including information from the two confidential informants. One informant confirmed defendant's involvement in the gang's drug operation on West Maypole and the other indicated that defendant used his alias to acquire the Broadview home. The officers also observed defendant's vehicles near both residences in July 1997, just prior to the warrant issuance on July 18, 1997.

■ Even if the question of probable clause is close here, the officers' good-faith reliance on the search warrant prevents suppression. The good-faith exception provides an exception to the exclusionary rule for evidence obtained by an officer acting in good faith and in reliance on a search warrant ultimately found to be unsupported by probable cause where the warrant was obtained from a neutral and detached judge, free from obvious defects other than nondeliberate errors in preparation, and containing no material misrepresentations. 725 ILCS 5/114—12(b)(1), (b)(2) (West 1996); see also *People v. Carlson*, 185 Ill. 2d 546, 560 (1999) (applying the good-faith exception). This exception, announced in *United States v. Leon*, 468 U.S. 897, 922-23, 82 L. Ed. 2d 677, 698-99, 104 S. Ct. 3405, 3420-21 (1984), does not apply in four situations: (1) where the issuing judge was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing judge wholly abandoned his judicial role; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where a warrant was so facially deficient that the executing officers cannot reasonably presume it to be valid. *Cooke*, 299 Ill. App. 3d at 281, quoting *People v. Bohan*, 158 Ill. App. 3d 811, 818 (1987).

■ The circuit court appears to have determined that the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable and/or that the warrant was so facially deficient that the executing officers could not have reasonably presumed it was valid. We disagree. We are mindful that a future

court may improperly attempt to use this opinion as justification for opening up our citizens' homes upon the mere commission of a crime and an affidavit of a law enforcement officer. However, this is not a bare-bones affidavit here. See *People v. Reed*, 202 Ill. App. 3d 760, 764 (1990) (good-faith exception does not apply to a search warrant based on a "bare-bones" affidavit), quoted in *Cooke*, 299 Ill. App. 3d at 281. The 16-page document contained extensive information about defendant's activities and residences. As discussed, it presented at least an arguable showing of probable cause and an officer's belief in the validity of the warrant and affidavit was not unreasonable.

We note that this court has recently affirmed a circuit court's decision to quash a search warrant and suppress evidence. In *People v. Damian*, 299 Ill. App. 3d 489, 490 (1998), the complaint for the search warrant stated that a confidential informant went to the defendant's address and made a controlled purchase of cocaine. The informant arranged to meet the officer again the next day, but failed to show. Six weeks later, the informant contacted the officer and indicated that the defendant again possessed cocaine. This court found insufficient facts to support a finding of probable cause because six weeks had passed since the controlled purchase, there was no evidence of continuing criminal conduct, there were no allegations as to where the cocaine was located in the second contact, and the reliability of the informant was questionable where he failed to appear at the time agreed to after the controlled purchase. *Damian*, 299 Ill. App. 3d at 492-94. This court also determined that the State waived argument as to the application of the good-faith exception. *Damian*, 299 Ill. App. 3d at 494.

The instant case is distinguishable given the facts to indicate ongoing conduct, the collection of information near to the time of the warrant issuance, and the information corroborating the informants' statements. Moreover, the State has not waived application of the good-faith exception here.

Accordingly, the order of the circuit court is reversed and remanded.

Reversed and remanded.

HARTMAN and THEIS, JJ., concur.