# Illinois Official Reports

## Appellate Court

---

### *People v. Manzo*, 2017 IL App (3d) 150264

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JORGE MANZO, JR., Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0264 |
| Rule 23 order filed<br>Motion to publish allowed<br>Opinion filed | August 25, 2017<br><br>October 6, 2017<br>October 6, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 09-CF-1345; the Hon. Edward A. Burmilia, Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier and Editha Rosario-Moore, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Lawrence M. Bauer, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel                 JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Lytton concurred in the judgment and opinion.
Justice O'Brien dissented, with opinion.

**OPINION**

¶ 1       Defendant, Jorge Manzo, Jr., contends that the circuit court erred in denying his motion to quash the search warrant and suppress evidence. We affirm.

¶ 2                            FACTS

¶ 3       On June 11, 2009, Officer Jeremy Harrison filed a complaint for a warrant to search the person of Ruben Casillas, a black Ford Explorer, and a residence located at 701 West Marion Street in Joliet—defendant Manzo's residence. The complaint included the affidavit of Harrison in which he averred that he purchased cocaine from Casillas in an undercover capacity on three different occasions.

¶ 4       According to Harrison, the first transaction occurred on May 20, 2009. Harrison contacted Casillas to purchase cocaine. Casillas told Harrison to meet him at Gonzalez Supermarket. When the two met at the supermarket, Harrison observed Casillas walking away from a black Ford Explorer. Harrison and Casillas met inside the store where the two exchanged cash for the narcotics. Casillas then exited the store and left in the black Ford Explorer. Harrison later discovered that the vehicle was registered to Leticia Hernandez, a known associate of Casillas, at 701 West Marion Street.

¶ 5       On May 28, 2009, Harrison again contacted Casillas to purchase cocaine. Casillas directed Harrison to meet him at Stang Kelly Liquors store. The two met inside the store and exchanged cash for the narcotics.

¶ 6       The third transaction occurred on June 8, 2009. Harrison contacted Casillas through text messages to again purchase cocaine. During the text message conversation, two other officers conducted surveillance at 701 West Marion Street (the residence where the black Ford Explorer was registered). The two other officers observed Casillas leave the residence after he directed Harrison to meet him at Stang Kelly Liquors store. The two officers conducted uninterrupted surveillance of Casillas as he walked to the store. As Casillas walked, he contacted Harrison again to change the meeting place to Martinez Groceries. The two met inside the store and exchanged money for narcotics. The complaint did not indicate whether officers observed Casillas return to the residence.

¶ 7       According to the complaint for the search warrant, field tests of the narcotics Casillas provided Harrison all indicated the presence of cocaine.

¶ 8       The warrant application also stated that Harrison positively identified Casillas from an Illinois driver's license photograph, and that "[l]aw enforcement records show Ruben J. Casillas as an associate of Leticia Hernandez who resides at 701 West Marion St., in Joliet ***." Harrison attested that he believed probable cause existed to search Casillas, the black Ford Explorer, and the residence located at 701 West Marion Street. Officers sought any evidence of unlawful possession of a controlled substance with or without intent to deliver,

cocaine, currency, proof of residency and identification, drug packaging, and drug paraphernalia.

¶ 9 The warrant judge issued the search warrant the same day the complaint was filed. Police searched the residence and recovered, among other things, cocaine and a handgun. Both items were found in the master bedroom closet. The search of Casillas and the black Ford Explorer are not relevant to this appeal.

¶ 10 The State charged defendant with unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(B) (West 2008)) and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2008)).

¶ 11 Prior to trial, defendant filed a motion to quash the search warrant and suppress the evidence. The motion alleged that the complaint for the search warrant failed to establish probable cause to conduct a search of the residence, which led to defendant's arrest and the seizure of evidence. Specifically, defendant asserted that the warrant was unsupported by any evidence that one or more of the transactions took place at the residence, that the police observed illegal activity at the residence, or that Casillas sold contraband or conducted other illegal activity at the residence. In addition, the motion argued that the police failed to seek or find any corroborating information to verify that Casillas lived at the residence.

¶ 12 Following extensive proceedings on the issue, the circuit court found the warrant established probable cause to believe there was a reasonable likelihood that contraband would be found in the residence. Therefore, the court denied defendant's motion to quash the search warrant and suppress evidence.

¶ 13 The cause then proceeded to a jury trial. The jury found defendant guilty of unlawful possession of a weapon by a felon but acquitted him of unlawful possession of a controlled substance with intent to deliver. The circuit court sentenced defendant to 36 months' probation.

¶ 14 ANALYSIS

¶ 15 On appeal, defendant contends the circuit court erred in finding probable cause to issue the warrant to search his residence.[1] Defendant contends the complaint for the search warrant did not establish probable cause because it failed to show a nexus between Casillas's illegal activities and defendant's residence. In other words, defendant asserts probable cause was lacking because the warrant did not include any information or observations connecting Casillas's illegal activity to defendant's residence. Upon review, we find the warrant judge had a substantial basis for finding probable cause to believe that evidence of Casillas's illegal activities would be found in defendant's residence. Therefore, we hold the circuit court did not err when it denied defendant's motion to quash the search warrant and suppress evidence.

¶ 16 Initially, we note that as a reviewing court, it is not our function to substitute our judgment for that of the warrant judge. *People v. Sutherland*, 223 Ill. 2d 187, 219 (2006). Instead, our task is to ensure that the warrant judge had a substantial basis for concluding that probable cause existed. *Id.* At a probable cause hearing, the warrant judge must make a practical, commonsense assessment of whether, given all of the circumstances set forth in the affidavit, there is a fair probability that evidence of a particular crime will be found in a

---

[1]Defendant does not challenge the validity of the warrant as to the search of the vehicle or Casillas.

particular place. *People v. Hickey*, 178 Ill. 2d 256, 285 (1997). "A showing of probable cause means that the facts and circumstances within the knowledge of the affiant are sufficient to warrant a person of reasonable caution to believe that an offense has occurred and that evidence of it is at the place to be searched." *People v. Moser*, 356 Ill. App. 3d 900, 908 (2005). The standard for probable cause rests upon the probability of evidence of criminal activity, not a showing of proof beyond a reasonable doubt. *People v. Brown*, 2014 IL App (2d) 121167, ¶ 22 (citing *People v. Stewart*, 104 Ill. 2d 463, 475-76 (1984)).

¶ 17    In determining whether probable cause for a search warrant exists, there must be a sufficient nexus between a criminal offense, the items to be seized, and the place to be searched. *People v. Beck*, 306 Ill. App. 3d 172, 178-79 (1999) (citing *People v. McCoy*, 135 Ill. App. 3d 1059, 1066 (1985)). If there is no direct information to establish such a nexus, the court may draw reasonable inferences to create the nexus. *McCoy*, 135 Ill. App. 3d at 1066. "A judge asked to issue a search warrant may draw reasonable inferences from the material supplied, and although it may not be easy to determine when an affidavit demonstrates probable cause, doubtful or marginal cases are largely resolved by resorting to the preference accorded to warrants." *Beck*, 306 Ill. App. 3d at 179 (citing *People v. Hancock*, 301 Ill. App. 3d 786, 792 (1998)).

¶ 18    Here, Harrison's affidavit showed that officers observed Casillas leave defendant's residence while communicating with Harrison to set up an imminent drug transaction. While under uninterrupted surveillance, Casillas walked from the residence to the location of the drug transaction. During a different transaction, Casillas was seen using a black Ford Explorer registered to defendant's residence. The vehicle was registered to Leticia Hernandez, who resided at the same residence as defendant. Although the affidavit lacked any information that showed Casillas resided at the residence, such information is not necessary. The critical question is whether the affidavit established a fair probability that evidence of Casillas's activity would be found in defendant's residence. See *Hickey*, 178 Ill. 2d at 285. The information contained within the affidavit sufficiently connected Casillas's drug activity to defendant's residence. It was, therefore, reasonable for the warrant judge to conclude that a nexus existed between Casillas's cocaine sales and defendant's residence. Therefore, the warrant judge had a substantial basis to find probable cause to issue the search warrant for defendant's residence.

¶ 19    In reaching this conclusion, we reject defendant's reliance on *People v. Lenyoun*, 402 Ill. App. 3d 787 (2010), for the proposition that the complaint for the search warrant failed to establish probable cause to search his residence. We find *Lenyoun* is factually distinguishable from the instant case.

¶ 20    In *Lenyoun*, a police officer first obtained a warrant to search defendant's person and his vehicle based on the observation of defendant leaving his residence on three occasions before meeting an individual on a street and exchanging an item for money. *Id.* at 788. Officers detained one individual who met with defendant. *Id.* The individual was found to possess cocaine, which he claimed he purchased from defendant. *Id.* The first search resulted in police finding currency and a canine's positive alert on defendant's vehicle. *Id.* at 789. However, the officers did not find any contraband. *Id.* The officers then obtained a second search warrant for defendant's residence. *Id.* The complaint for the search warrant did not indicate that officers ever saw contraband removed from or taken into the residence. *Id.* at

- 4 -

790. Nor did the complaint show that contraband was purchased from the residence or that officers observed defendant make any drug transactions from the residence. *Id.*

¶ 21 The circuit court granted defendant's motion to quash the search warrant and suppress evidence, finding that the complaint for the search warrant lacked sufficient specificity to justify a search of the residence. *Id.* The State appealed. On appeal, the court affirmed on the basis that the complaint for the search warrant lacked a nexus connecting defendant's criminal activity to his residence. *Id.* at 797. Therefore, the court found that the totality of the circumstances failed to show a fair probability that contraband or evidence of a crime would be found at defendant's residence. *Id.*

¶ 22 The nexus absent in *Lenyoun* is present in the instant case. Unlike *Lenyoun*, which involved only one transaction, Harrison conducted three undercover purchases from Casillas. On one occasion, officers observed Casillas leave the residence to sell Harrison cocaine. The officers' constant surveillance established that Casillas left the residence and sold cocaine to Harrison without making any stops before the transaction. Further, Casillas was seen using a vehicle registered to the residence to conduct a separate drug transaction.

¶ 23 CONCLUSION

¶ 24 The judgment of the circuit court of Will County is affirmed.

¶ 25 Affirmed.

¶ 26 JUSTICE O'BRIEN, dissenting:

¶ 27 The majority holds that the circuit court did not err when it denied defendant's motion to quash the search warrant and suppress evidence. *Supra* ¶ 15. In its holding, the majority finds that the warrant judge had a substantial basis for finding probable cause to believe that evidence of Casillas's illegal activities would be found in defendant's residence. *Supra* ¶ 15. I dissent.

¶ 28 Here, there are only two allegations within the complaint that have any reference to the residence in question. The first allegation shows that Casillas used Leticia Hernandez's vehicle (which was registered to the residence) to arrive at one of the three transactions. The other allegation shows that Casillas was seen leaving the residence prior to one of the three transactions. Noticeably absent from the complaint are any allegations that Casillas lived in the residence, stored the narcotics in the residence, or conducted any drug transactions inside the residence. The three alleged transactions occurred over a period of 19 days (May 5 to June 8, 2009). At best, the complaint established that Casillas was an acquaintance of the owners of the residence. It did not establish a nexus to believe evidence of Casillas's illegal activities would be found in the residence. I would, therefore, find that the complaint for the search warrant failed to provide the warrant judge with a substantial basis to find probable cause to search defendant's residence.

¶ 29 The majority reaches the opposite conclusion. In making this determination, the majority rejects defendant's reliance on *Lenyoun*, 402 Ill. App. 3d 787. The majority finds that *Lenyoun* is factually distinguishable. *Supra* ¶ 19. I disagree. *Lenyoun* actually supports a finding that the complaint for the search warrant failed to establish probable cause to search defendant's residence.

¶ 30    In contrast to this case, the warrant application in *Lenyoun* contained more information connecting defendant to the residence in question—the police observed him leave the residence multiple times before three purported drug transactions (one of which was a cocaine transaction on a public street). *Lenyoun*, 402 Ill. App. 3d at 788-89. Significantly, the residence in question was listed on defendant's driver's license. *Id.* at 789. Nevertheless, the appellate court found that the complaint lacked a sufficient nexus connecting defendant's illegal activity to the residence on the basis that "[t]o accept a single drug sale conducted from a car by a defendant as probable cause for the search of the defendant's residence would nullify the rule of law that disavows 'bare-bones' affidavits to support the issuance of a warrant." *Id.* at 795.

¶ 31    The complaint for the search warrant in this case included even less information connecting Casillas's illegal activity to the residence in question. Casillas's driver's license did not list the residence, and the police only observed defendant leave the residence before one transaction. Additionally, Casillas was seen leaving the vehicle registered to the residence (under Leticia Hernandez) before only one transaction. Critically absent from the complaint are any allegations as to how often Casillas drove the vehicle, how long (if at all) Casillas stayed at the residence, or whether Leticia Hernandez had any connection to Casillas's illegal activity. Like the court in *Lenyoun*, I would find that the "bare bones" affidavit in support of the search warrant failed to establish a nexus connecting Casillas's illegal activity to the residence. Therefore, I would hold that the circuit court erred in denying defendant's motion to quash the search warrant and suppress evidence.