# Illinois Official Reports

## Appellate Court

---

### *People v. Teague*, 2019 IL App (3d) 170017

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARNELL E. TEAGUE, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-17-0017 |
| Filed | October 24, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 15-CF-753; the Hon. Norma Kauzlarich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Nate Nieman, of Nieman Law Group, P.C., of Moline, for appellant.<br><br>John L. McGehee, State's Attorney, of Rock Island (Patrick Delfino, Lawrence M. Bauer, and Stephanie Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Presiding Justice Schmidt and Justice Holdridge concurred in the judgment and opinion. |

¶ 1 The defendant, Darnell E. Teague, was convicted of two counts of unlawful possession of a controlled substance with the intent to deliver (720 ILCS 570/401(a)(2)(B), (c)(1) (West 2014)) and was sentenced to concurrent 10-year prison terms. On appeal, Teague argues that the circuit court erred when it denied his pretrial motion to suppress evidence. We affirm.

¶ 2 FACTS

¶ 3 On September 30, 2015, Sergeant Ramsey of the East Moline Police Department sought and obtained search warrants for Teague, a car, and his residence. Ramsey's affidavit stated, *inter alia*, that (1) a confidential source told him that Teague was involved in distributing cocaine; (2) Ramsey and another detective had set up a controlled purchase of cocaine by the confidential source from Teague; (3) the confidential source called Teague and set up the buy, which took place in the 100 block of 41st Avenue in East Moline; (4) the two detectives surveilled the residence at 1950 3rd Street in East Moline and watched Teague leave that residence in a dark gray Chevrolet Impala; (5) the other detective followed Teague, who drove to the 100 block of 41st Avenue; (6) the other detective watched the confidential source purchase cocaine from Teague, who drove off; (7) Teague had listed 1950 3rd Street as his residence in 2013; (8) the dark gray Chevrolet Impala was registered to Stephanie A. Johnston, who had previously listed her residence in 2014 as 1950 3rd Street; and (9) in 2013, a domestic battery incident occurred in which Teague was the offender and Johnston, who said Teague was her boyfriend, was the victim.

¶ 4 In addition, Ramsey's affidavit stated:

"It has been the experience of [Ramsey] that person(s) who use, produces [*sic*], sell or distribute cannabis, and/or other controlled substances often possess firearm and hide or store cannabis and/or other controlled substances and the money derived from the sale of cannabis, and/or other controlled substances in their residence, garages, and motor vehicles, and often maintain drug records and financial records pertaining to the use and/or sale of cannabis, and/or other controlled substances in their residence, garages, electronic devices, and motor vehicles including packaging material, firearms, firearm ammunition, cell phones, indicia of residency, scales, drug paraphernalia, United States currency, and police scanners."

Finally, the affidavit stated that Ramsey believed "that he has shown that there is probable cause to believe that the items stated in the complaint for search warrant are located at 1950 3rd Street."

¶ 5 The search warrant for 1950 3rd Street was executed on October 1, 2015, resulting in the seizure of, *inter alia*, suspected narcotics (cocaine, heroin, and cannabis), a digital scale with suspected cocaine residue, packaging materials, a drug cutting agent, drug paraphernalia, $550 in United States currency, and two cell phones. Nothing was found in the dark gray Chevrolet Impala or on Teague's person. As a result of the seizures, the State charged Teague with two counts of unlawful possession of a controlled substance with the intent to deliver (*id.*).

¶ 6 On February 24, 2016, Teague filed a motion to suppress evidence, alleging that the controlled buy that took place in the 100 block of 41st Avenue did not provide probable cause

to search his residence at 1950 3rd Street. After a hearing, the circuit court took the matter under advisement.

¶ 7 The circuit court announced its ruling in court on April 15, 2016. The court found that there existed facts to support a reasonable inference that narcotics were at his residence at 1950 3rd Street; specifically, the confidential source's tip that Teague was involved in distributing cocaine and the observation of Teague leaving the residence at 1950 3rd Street and driving to the location of the controlled buy. Accordingly, the court denied Teague's motion to suppress.

¶ 8 The case proceeded to a stipulated bench trial, which resulted in the court finding Teague guilty of both charges. He was later sentenced to concurrent 10-year prison terms. Teague appealed.

¶ 9                                                    ANALYSIS

¶ 10 On appeal, Teague argues that the circuit court erred when it denied his pretrial motion to suppress evidence. Specifically, Teague claims that the controlled buy that occurred across town did not give probable cause for the police to conduct a search of his residence.

¶ 11 The United States and Illinois Constitutions provide that a search warrant may issue only upon a showing of probable cause. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Probable cause exists when "the totality of the facts and circumstances within the affiant's knowledge at that time was sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched." (Internal quotation marks omitted.) *People v. McCarty*, 223 Ill. 2d 109, 153 (2006). The court tasked with deciding whether to issue the warrant must

> "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

If the police intend to search a location, "a sufficient nexus between a criminal offense, the items to be seized, and the place to be searched must be established." *People v. Beck*, 306 Ill. App. 3d 172, 178 (1999); see also 2 Wayne R. LaFave, Search and Seizure § 3.7(d) (5th ed. 2017). The nexus need not come from direct information; the issuing court may draw reasonable inferences from the affidavit. *Beck*, 306 Ill. App. 3d at 179. However, the affidavit must provide more than just bare conclusions asserted by the affiant. *United States v. Leon*, 468 U.S. 897, 915 (1984).

¶ 12 As the reviewing court, our task is to ensure that the issuing court had a substantial basis to conclude that probable cause existed. *Gates*, 462 U.S. at 238-39. In doing so, we must not substitute our judgment for that of the issuing court. *McCarty*, 223 Ill. 2d at 153. "Although we review a circuit court's ruling on a motion to suppress *de novo* [citation], we defer to an issuing judge's determination of probable cause and resolve any doubts in favor of upholding a warrant that has been issued." *People v. Rodriguez*, 2018 IL App (1st) 141379-B, ¶ 48; see also *People v. Exline*, 98 Ill. 2d 150, 156 (1983).

¶ 13 Teague's argument largely rests upon two decisions in which Illinois courts found that probable cause to search a residence was lacking. In *People v. Lenyoun*, 402 Ill. App. 3d 787, 788 (2010), the police had been surveilling a suspected narcotics trafficking operation run by

the defendant and another individual. The defendant had been observed on three occasions leaving an apartment complex, from which he drove to a nearby location, met an individual, and appeared to exchange an item for United States currency. *Id.* One of the individuals was later detained and found with cocaine in his possession, which he said he had purchased from the defendant after calling a phone number given to him previously by the defendant. *Id.* A detective sought and obtained a search warrant for the defendant's person and his vehicle, but no contraband was found upon execution of the search warrant. *Id.* However, the search did produce (1) the defendant's driver's license, which listed his residence as the aforementioned apartment complex; (2) four business cards, one of which listed the same phone number that the detained individual had been given by the defendant; and (3) a list containing the word "dope." *Id.* at 788-89. In addition, a drug dog alerted to the interior of the vehicle and the $352 on the defendant's person. *Id.* at 789. Approximately two hours later, the detective returned to the same judge and sought and obtained a second search warrant for the defendant's residence. *Id.* The complaint for the warrant was essentially identical to the first complaint, but the second complaint added the information obtained through the execution of the first warrant. *Id.* The *Lenyoun* court held that probable cause to search the residence was not established because there was no information to establish a nexus between the criminal activity and the residence. *Id.* at 800.

¶ 14        Not only are we not bound by the decisions of other districts of the appellate court (*People v. Ward*, 192 Ill. App. 3d 544, 554 (1989)), *Lenyoun* is distinguishable from the instant case because it involved the issuance of a second search warrant after the first produced no contraband (see *Lenyoun*, 402 Ill. App. 3d at 788-89) and thereby raised concerns with the potential abuse of the search warrant process:

> "To sanction a successive search warrant within hours of a failed search pursuant to the first warrant, with no additional information provided connecting the defendant's residence to his criminal activity, will simply provide an incentive to officers to seek an immediate second warrant for the defendant's home as a fall-back search for contraband without the need to develop facts that give rise to a reasonable inference of criminal activity in the home. Such a process of elimination of places to be searched undermines the express protection to a citizen's home accorded by the federal and Illinois constitutions." *Id.* at 799-800.

Additionally, there is a persuasive contrary conclusion in *Lenyoun*, as evidenced by Justice Lampkin's well-reasoned dissent, in which she stated, *inter alia*:

> "Far from a 'bare-bones' affidavit, [the detective's] sworn complaint presented specific descriptions of defendant's alleged drug sales and details about the times he drove directly from his *** apartment to those drug sales. The complaint established that a nexus existed between defendant's *** apartment and the facts indicating that he was engaged in an ongoing course of criminal conduct. Based on the totality of the information provided, the issuing judge here drew reasonable inferences when he found probable cause to search defendant's *** apartment. The sworn complaint was sufficient to warrant a person of reasonable caution to believe that defendant had violated the law and evidence of the violation would be at his *** apartment." *Id.* at 806 (Lampkin, J., dissenting).

For these reasons, we find Teague's suggestion that we follow *Lenyoun* unpersuasive.

¶ 15    Teague also relies on *People v. Rojas*, 2013 IL App (1st) 113780. In that case, a drug enforcement agent obtained a warrant to search the defendant and his residence. *Id.* ¶ 3. The complaint alleged that the defendant was involved in a drug trafficking operation that used residences as "stash houses" for the narcotics. *Id.* ¶ 5. Through intercepted phone conversations involving the defendant, the drug enforcement agent believed that one of the stash houses— which was not the defendant's residence—was where the defendant stored his narcotics and his proceeds from the operation. *Id.* ¶ 7. Regarding the defendant's residence, the complaint contained three intercepted phone conversations that led the agent to believe that probable cause also existed to search that residence. *Id.* ¶¶ 8-10. However, the only mention of the defendant's residence in those phone conversations was when the defendant asked one of the alleged traffickers if he could " 'come over here close to my house.' " *Id.* ¶ 8. The other two calls, according to the agent, indicated that the defendant and the other trafficker were discussing whether payment had been received for one shipment of cocaine supplied by the defendant and whether another shipment had arrived. *Id.* ¶ 9. The defendant stated that the shipment had arrived but that he wanted to look at the cocaine before he gave it to the other trafficker. *Id.* The circuit court judge issued the warrant to search the defendant's residence, and the search ultimately produced a 9-millimeter handgun, resulting in the felon defendant being charged with unlawful possession of the gun. *Id.* ¶ 11. The defendant filed a motion to suppress evidence, which alleged that no probable cause existed to support the issuance of the search warrant for his residence. *Id.* ¶ 12. The circuit court agreed with the defendant and granted his motion. *Id.* ¶ 13.

¶ 16    On appeal, the *Rojas* majority ruled that the phone conversations listed as support for the search of the defendant's residence were cryptic and did not indicate where the drug trafficking activity was taking place. *Id.* ¶ 18. The *Rojas* court stated: "While the July 3, 2009, wiretapped conversation indicates defendant requested that [the other trafficker] 'come over here close to my house,' there is no direct observational evidence that the two actually met or conducted *any* transaction and no indication as to why they were meeting." (Emphasis in original.) *Id.* The court found that no reasonable inference could be drawn that connected the defendant's residence to the operation either and that the only support for a probable cause finding was the agent's bare conclusion that individuals involved in drug trafficking often keep records of the operation in their residence. *Id.* Justice Epstein dissented; however, his dissent was based on his belief that the good-faith exception applied such that the circuit court's suppression ruling should have been reversed. See *id.* ¶¶ 27-37 (Epstein, J., dissenting). Justice Epstein agreed with the majority that probable cause was lacking. *Id.* ¶ 27.

¶ 17    *Rojas* is also distinguishable from the instant case. Here, unlike the defendant in *Rojas*, Teague was observed leaving his residence, getting into the dark gray Chevrolet, and driving directly to the buy location. The *Rojas* majority even acknowledged that had such facts been present in that case, a different result may have been warranted: "Had law enforcement seen or heard defendant leave his residence, meet with [the other trafficker], and hand him a package, for example, this analysis would likely be different." *Id.* ¶ 18 (majority opinion). Thus, *Rojas* is of no avail to Teague and could even be said to undermine his argument.

¶ 18    A different panel of this court recently issued a decision in *People v. Manzo*, 2017 IL App (3d) 150264, ¶ 3, *rev'd*, 2018 IL 122761, in which a search warrant was issued for Ruben Casillas, a vehicle, and the defendant's residence after an undercover officer had purchased cocaine from Casillas on three separate occasions. On one of those occasions, police officers

observed Casillas leave the defendant's residence and walk directly to the prearranged buy location. *Id.* ¶ 6. The search of the defendant's residence produced cocaine and a handgun. *Id.* ¶ 9. The defendant was subsequently charged with possession of the cocaine with intent to deliver and unlawful possession of a weapon by a felon. *Id.* ¶ 10. The defendant filed a motion to suppress evidence, alleging that there was no probable cause to search his residence. *Id.* ¶ 11. The circuit court disagreed and found that the complaint for search warrant established probable cause. *Id.* ¶ 12.

¶ 19    On appeal, the *Manzo* majority affirmed the circuit court's ruling, holding that it was reasonable on those facts for the issuing judge to conclude that a nexus existed between Casillas's narcotics sales and the defendant's residence. *Id.* ¶ 18. Of critical importance to the *Manzo* majority's decision was the uninterrupted surveillance of Casillas leaving the defendant's residence and walking to the buy location. *Id.*

¶ 20    Justice O'Brien dissented, stating that she believed the complaint was insufficient to establish probable cause to search the defendant's residence. *Id.* ¶ 28 (O'Brien, J., dissenting). She pointed out that only two allegations linked Casillas's illegal activity to the residence: (1) the vehicle he used was registered to the residence's address and (2) he was seen leaving the residence before one of the buys. *Id.* She concluded that "[a]t best, the complaint established that Casillas was an acquaintance of the owners of the residence. It did not establish a nexus to believe evidence of Casillas's illegal activities would be found in the residence." *Id.*

¶ 21    Manzo appealed to our supreme court, which reversed this court's judgment. *People v. Manzo*, 2018 IL 122761. The supreme court ruled that the totality of the circumstances failed to establish a nexus between Casillas's drug deals and Manzo's residence. *Id.* ¶ 61. The supreme court further held that the good-faith exception did not apply to save the warrant:

> "We decline to sanction the search of a third party's home based solely on the fact that an individual was seen leaving that home to go to one drug deal and arrived at another drug deal 19 days earlier driving a vehicle registered to that home. To hold otherwise would undermine the express protections accorded a citizen's home under the United States and Illinois Constitutions." *Id.* ¶ 71.

¶ 22    This case can be factually distinguished from *Manzo*. Unlike the residence in that case, the residence in this case was in fact the defendant's residence. Additionally, unlike the officer's affidavit in *Manzo*, the officer's affidavit in this case contained descriptions of his experience with drug investigations and habits of drug dealers, in addition to the confidential tip that Teague was involved in distributing cocaine, to support an inference that Teague was storing drugs and other items associated with a drug-selling operation in his residence. See *id.* ¶ 60. Accordingly, *Manzo* provides little guidance for this case.

¶ 23    We find the facts of this case most closely resemble the facts in *People v. Lyons*, 373 Ill. App. 3d 1124 (2007). In that case, a police officer helped set up a controlled purchase of cocaine from the defendant. *Id.* at 1126. Other police officers observed the defendant leave his residence, enter a vehicle, and drive to the location of the controlled buy. *Id.* The police officers followed the defendant to the location, where the deal was consummated. *Id.* They also followed the defendant back to his residence. *Id.* A search warrant for the defendant and his residence was sought and obtained. *Id.* at 1126-27. The defendant filed a motion to suppress, which the circuit court denied after a hearing in which the court found that it was reasonable to infer that the narcotics came from the defendant. *Id.* On appeal, the Fourth District ruled that it was reasonable under the circumstances for the issuing judge to infer that the narcotics were

either in the defendant's house or the vehicle and that the defendant "was in possession of other controlled substances, currency, and drug paraphernalia at [his] residence." *Id.* at 1128.

¶ 24 Like the defendant in *Lyons*, Teague was observed leaving his residence, getting into a vehicle, and driving directly to the controlled buy location. We hold that these facts, when coupled with Ramsey's experience, which taught him that individuals who sell controlled substances often store materials associated with the operation at their residence, provided a sufficient basis from which probable cause could be found to issue the search warrant for Teague's residence. See *id.*; see also *Rodriguez*, 2018 IL App (1st) 141379-B, ¶ 48; *Exline*, 98 Ill. 2d at 156. Accordingly, we hold that the circuit court did not err when it denied Teague's motion to suppress evidence.

¶ 25 Our ruling obviates the need to address Teague's argument that the good-faith exception does not apply to save the evidence from suppression.

¶ 26                                     CONCLUSION
¶ 27 The judgment of the circuit court of Rock Island County is affirmed.

¶ 28 Affirmed.