2019 IL App (3d) 180366

Opinion filed June 24, 2019

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | Appeal No. 3-18-0366 |
| v. | ) ) | Circuit No. 18-CF-149 |
| TYRAN S. PRUITTE, | ) ) | Honorable Daniel D. Rippy, |
| Defendant-Appellee. | ) | Judge, Presiding. |

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | Appeal No. 3-18-0367 |
| v. | ) ) | Circuit No. 18-CF-150 |
| DIONNIE T. NEAL, | ) ) | Honorable Daniel D. Rippy, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice McDade concurred in the judgment and opinion.
Justice Carter dissented, with opinion.

**OPINION**

¶ 1    Following the Will County circuit court's order granting defendants' motions to quash the search warrant and suppress evidence, the State filed a certificate of impairment and notice of appeal. On appeal, the State argues the warrant-reviewing judge erred in granting defendants' motions. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On January 17, 2018, Joliet narcotics agent Matthew Campos appeared before a Will County circuit judge and presented the following written complaint for a search warrant.

"1. Joliet Narcotics Agent Campos now appears before the undersigned Judge of the Circuit Court and request the issuance of a search warrant to search:

A. The following described property:

The premise located at 221 S. Hunter, Apartment #2S, Joliet, Will County, Illinois 60436, being a three story apartment building, with brown in color brick exterior, the number '221' above the brown in color exterior door, and the apartment located on the second floor at the south end of the building with the number '2S' clearly marked on the door.

2. Complainant requests a search warrant for the purpose of seizing the following described instruments, articles, and things: Heroin, other controlled substances, United States Currency, proof of residency, proof of identification, drug records, drug paraphernalia and any other evidence of unlawful possession of a controlled substance and unlawful possession of a controlled substance with intent to deliver.

3. The aforementioned instruments, articles and things have been used in the commission of or constitute evidence of the offense of unlawful possession of a controlled substance and unlawful delivery of a controlled substance.

4. Complainant has probable cause to believe, based upon the following facts, that the above listed things to be seized are now located upon the person and/or property set forth above:

5. Your complainant, Matt Campos, has been a Joliet police officer for over 4 years and is currently assigned to the Joliet narcotics unit. During the course of your complainant's career as a police officer, your complainant has participated in many major crime investigations. Your complainant has been involved [in] many drug investigations during the course of his employment as a police officer, including investigations involving firearms, confidential informants, and search warrants.

Within the past seven days your complainant spoke with a confidential source, hereafter referred to as Pat Doe. The information for this application is from Pat Doe, my own observations, other sworn law enforcement personnel, and records.

Pat Doe has had previous arrests for drugs, obstructing, robbery, forgery, traffic, obscenity, larceny, invasion of privacy, and vehicular invasion. Pat Doe is currently providing information for consideration of pending criminal charges and pending financial penalties.

While inside the residence located at 221 S. Hunter, Apartment #2S, Joliet, Will County, Illinois, being a three story apartment building, with brown in

3

color brick exterior, the number '221' above the brown in color exterior door, and the apartment located on the second floor at the south end of the building with the number '2S' clearly marked on the door within the past seven days Pat Doe observed a M/B subject to be in possession of multiple baggies of heroin. Pat Doe told your complainant that the M/B FNU LNU[1] indicated the heroin was his property and that he was selling the heroin. Pat Doe has seen heroin on prior occasions and can recognize heroin by it's [*sic*] texture, color, and odor.

Your complainant with Pat Doe has identified the premise located at 221 S. Hunter, Apartment #2S, Joliet, Will County, Illinois 60436, being a three story apartment building, with brown in color brick exterior, the number '221' above the brown in color exterior door, and the apartment located on the second floor at the south end of the building with the number '2S' clearly marked on the door. Pat Doe has known the M/B FNU LNU that was in possession of the heroin to reside at the premise located at 221 S. Hunter, Apartment #2S, Joliet, Will County, Illinois 60436, being a three story apartment building, with brown in color brick exterior, the number '221' above the brown in color exterior door, and the apartment located on the second floor at the south end of the building with the number '2S' clearly marked on the door for over one month.

Therefore, your complainant believes probable cause exists for the issuance of a search warrant for the premise located at 221 S. Hunter, Apartment #2S, Joliet, Will County, Illinois 60436, being a three story apartment building, with brown in color brick exterior, the number '221' above the brown in color

---

[1]The record establishes that "FNU" is an acronym for "first name unknown" and "LNU" is an acronym for "last name unknown."

exterior door, and the apartment located on the second floor at the south end of the building with the number '2S' clearly marked on the door."

In a supporting affidavit, dated January 17, 2018, Pat Doe averred

"1. That I wish my identity to be concealed because I fear reprisal from the M/B FNU LNU for providing information to narcotics agent Campos regarding 221 S. Hunter, Apartment #2S, Joliet, Will County, IL.

2. That I have provided the information to narcotics agent Campos contained in this complaint for Search Warrant; have read the complaint and all of the representations indicated in the complaint as having been made by me were made by me and are true and correct; and

3. That I am appearing personally before the Judge being asked to issue this Search Warrant and have identified myself to the Judge and indicated my name is fictitious."

¶ 4   On the same date, the judge signed Campos's complaint. The judge then signed and issued the following search warrant.

"1. On this day, Tuesday, the 16th of January, 2018,[2] Joliet Narcotics Agent Campos, Complainant and affiant, have signed and sworn to a complaint for search warrant before me. Upon examination of the written complaint I find that said complaint on its face states facts sufficient to show probable cause for the issuance of a search warrant, and I therefore command that the following be searched:

---

[2]The body of the warrant contains the date "Tuesday, the 16th of January, 2018." This appears to be a scrivener's error, as the date of issue at the end of the warrant is "1/17, 2018." The date of issue is the same as the signature dates on the complaint for the warrant and Doe's affidavit.

A. The following described property:

The premise located at 221 S. Hunter, Apartment #2S, Joliet, Will County, Illinois 60436, being a three story apartment building, with brown in color brick exterior, the number '221' above the brown in color exterior door, and the apartment located on the second floor at the south end of the building with the number '2S' clearly marked on the door.

I further command that the following described instruments, articles and things which have been used in the commission of, or which constitute evidence of the offense of unlawful possession of a Controlled Substance and Unlawful possession of a Controlled Substance with intent to deliver and seize there from:

Heroin, and other controlled substances, United States currency, proof of residency, proof of identification, drug records, drug paraphernalia and any other evidence of unlawful possession of a controlled substance and unlawful possession of a controlled substance with intent to deliver."

¶ 5       The Joliet police executed the search warrant on January 19, 2018. The police seized from the scene a used syringe, three Dormin pills, $100 in United States currency, a drug scale, three semiautomatic pistols, 57 live rounds of ammunition, and a clear plastic bag containing suspected ecstasy.

¶ 6       On January 31, 2018, the State charged Tyran S. Pruitte with two counts of unlawful use of a weapon by a felon (720 ILCS 5/24-1.1(a), (e) (West 2018)) and two counts of unlawful possession of a firearm by a street gang member (*id.* § 24-1.8(a)(1), (b)). The indictment also charged Dionnie T. Neal with one count each of possession of a firearm without requisite firearm

6

owner's identification card (430 ILCS 65/2(a)(1), 14(c)(3), 8(b) (West 2018)) and aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1)(3)(D) (West 2018)).

¶ 7 During the pretrial proceedings, Pruitte and Neal filed separate motions to quash the search warrant and suppress evidence. Pruitte's motion argued that the complaint for the warrant was insufficient because it failed to name or describe the appearance of the person who was the target of the search, the police did not conduct surveillance on the location to establish that narcotics trafficking was occurring, and the complaint contained no description of the packaging and appearance of the narcotics. Neal's motion contended that the complaint for the search warrant did not indicate if the complaining officer had verified the location of the residence to be searched and failed to state facts in support of Doe's credibility or reliability other than that Doe was providing information in exchange for leniency in his criminal case.

¶ 8 On May 18, 2018, the reviewing judge heard arguments on defendants' motions. At the beginning of the proceeding, the State conceded that defendants were overnight guests at the searched location. Defendants presented no evidence in support of their motions. Instead, the attorneys who represented each defendant argued that the application for the search warrant did not allege sufficient facts to establish a substantial basis for the issuing judge to conclude that probable cause existed to believe that criminal activity was occurring at the location specified in the warrant. Further, the good-faith exception did not apply because the complaint for the warrant was so lacking in probable cause that it rendered a police officer's belief in the validity of the warrant to be unreasonable.

¶ 9 The reviewing judge found "there is no question that this search warrant is bare" and that the "search warrant, excuse me but for lack of a better term, sucks. There is nothing in here in my mind that is particularly probable cause worthy." The reviewing judge concluded that "the

7

four corners [of the complaint] were completely insufficient to support probable cause of the search warrant." The reviewing judge granted defendants' motions to quash the warrant. In a supplemental order, the reviewing judge ruled that the probable cause was so lacking that it negated the good faith of the officers who executed the search warrant.

¶ 10    The State filed a certificate of substantial impairment and notice of appeal in each defendant's case. We subsequently granted the State's motion to consolidate defendants' cases on appeal.

¶ 11                                    II. ANALYSIS

¶ 12    The State argues the warrant-reviewing judge erred in granting defendant's motion to quash the warrant because the complaint for the warrant alleged sufficient probable cause to believe that criminal activity was occurring at the described apartment. Neal argues the reviewing judge did not err, as Campos's complaint was so "bare bones" that it did not provide probable cause for the issuance of the warrant. We find that the reviewing judge did not err, as the complaint for the warrant was insufficient to cause a reasonable person to believe that evidence of unlawful possession or delivery of a controlled substance was at the described location and the complaint was so deficient that the good-faith exception to the exclusionary rule does not apply.

¶ 13                                    A. Briefing

¶ 14    At the outset, we note that Pruitte has not filed a responsive brief in this consolidated appeal. However, we can decide this case in the absence of Pruitte's brief because his codefendant, Neal, has filed a responsive brief and "the record is simple and the claimed errors are such that [we] can easily decide them without the aid of an appellee's brief." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976); see also *People v.*

*Cosby*, 231 Ill. 2d 262, 285 (2008) (applying *Talandis* in the context of a review of a motion to suppress evidence).

¶ 15                           B. Standard of Review

¶ 16         An appeal from the circuit court's granting of a motion to suppress evidence presents questions of fact and law. *People v. McCarty*, 223 Ill. 2d 109, 148 (2006). The court's findings of fact are entitled to deference and will only be reversed when those rulings are against the manifest weight of the evidence. *People v. Burns*, 2016 IL 118973, ¶ 15. The court's legal ruling to suppress the evidence is subject to *de novo* review. *People v. Lampitok*, 207 Ill. 2d 231, 240 (2003).

¶ 17                    C. Application for the Search Warrant

¶ 18         The fourth amendment to the United States Constitution provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV.

Article I, section 6, of the Illinois Constitution similarly prohibits the issuance of a warrant absent a showing of probable cause "supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, § 6.

¶ 19         Probable cause to issue a search warrant exists where the totality of the facts and circumstances known to the affiant is sufficient to warrant a person of reasonable caution to believe that a criminal offense occurred at the described location and that evidence of that offense is located at that location. *People v. Griffin*, 178 Ill. 2d 65, 77 (1997); *People v. Stewart*,

9

104 Ill. 2d 463, 476 (1984). In other words, the information presented to the judge must establish a nexus between the criminal offense, the items to be seized, and the place to be searched. *People v. Beck*, 306 Ill. App. 3d 172, 178-79 (1999).

¶ 20        When presented with a complaint for the warrant, a judge must make a

> "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

"[S]ufficient information must be presented to the [judge] to allow the [judge] to determine probable cause, as his action cannot be a mere ratification of the bare conclusions of others." *People v. Manzo*, 2018 IL 122761, ¶ 35. A warrant that is based on an affidavit that does not provide a substantial basis for the issuing judge to determine the existence of probable cause is entitled to no deference. *United States v. Leon*, 468 U.S. 897, 915 (1984). A conclusory statement of probable cause or "bare bones" affidavit is insufficient foundation for a search warrant. *Id.*; *Gates*, 462 U.S. at 239.

¶ 21        In the instant case, the complaint for the search warrant was structured to include a description of the residence that the police sought access to and probable cause allegations from Campos and Doe pertaining to criminal activity occurring at the residence. While the residence description was fairly detailed, the probable cause allegations failed to sufficiently connect the residence to the two crimes alleged in the complaint: unlawful possession of a controlled substance and unlawful delivery of a controlled substance.

¶ 22        In the complaint, Campos alleged that he had four years' experience as a police officer, he was then assigned to the Joliet police narcotics unit, and he had participated in many major crimes investigations involving firearms, confidential informants, and search warrants. Campos's general background information served only to establish his reliability as an affiant and did not connect the described residence to any criminal activity. Notably, Campos's background included no indication that he had worked with confidential source Doe on prior occasions or conducted surveillance on the residence at issue. Thus, this portion of the probable cause allegation fails to establish a connection between the residence and the alleged criminal activity and does little to indicate the reliability of the subsequent allegations.

¶ 23        Following the background information, Campos alleged that he spoke with Doe in the week prior to filing the complaint. Doe told Campos that he had been inside the described location in the past seven days and had observed an unnamed black male in possession of "multiple baggies of heroin." Doe alleged that he could recognize heroin based on its texture, color, and odor. The unnamed black male indicated to Doe that the heroin was his and that he was selling heroin. Doe told Campos that the black male resided at the described residence. These allegations, at best, provided a very general description of a single incident of criminal activity and were properly characterized as "bare" by the reviewing court. Notably absent from the complaint was any indication that Campos or another officer had conducted surveillance on the location or the described black male to confirm the link between the residence and criminal activity. Thus, from our review, we find that the complaint for the warrant failed to reasonably establish a nexus between the residence and criminal activity.

¶ 24        Even if we were to find that the minimal allegations in the complaint provided a sufficient link between the residence and criminal activity, the complaint fails to sufficiently

establish Doe's reliability as a source. The complaint only states that Doe could identify heroin from its texture, color, and odor because he had seen it on prior occasions. Notably absent from the complaint was any allegation that Campos or another officer had experience working with Doe on prior investigations. As a result, the allegations of criminal activity were unverified and from a source whose reliability had not been established.

¶ 25    The State argues that Doe's allegations are entitled to a presumption of reliability because Doe personally appeared before the judge that issued the warrant. While the record establishes, via Doe's affidavit, that Doe appeared before the issuing judge, it indicates that Doe either made no oral representations to the judge or the judge did not consider Doe's spoken statements. Instead, the warrant states that the judge relied solely on the "written complaint." Given these indications, the judge had little to no opportunity to assess Doe's credibility. Accordingly, we find that the presumption of reliability does not attach to Doe's statements.

¶ 26    Finally, we note that Doe's overall credibility is subject to question due to the criminal history alleged in the complaint. The complaint provides that Doe had multiple prior arrests that included charges of robbery, larceny, and forgery. While these charges provide a general basis for defendant's knowledge of the appearance of narcotics, the charges also constitute crimes of dishonesty, and where they result in a criminal conviction, they serve to discredit a witness's trial testimony. See *People v. Atkinson*, 186 Ill. 2d 450, 465 (1999); Ill. R. Evid. 609 (eff. Jan. 1, 2011); see also *People v. Paul*, 304 Ill. App. 3d 404, 412 (1999) (finding that armed robbery is a crime of dishonesty); *People v. Flowers*, 306 Ill. App. 3d 259, 264 (1999) (misdemeanor theft is a crime involving dishonesty); *People v. Jacobs*, 51 Ill. App. 3d 455, 460 (1977) (noting forgery is a crime of dishonesty). Doe's statements in the warrant and affidavit are not trial testimony,

12

but they remain subject to similar credibility concerns. As a result, Doe's prior charges for crimes of dishonesty diminish his credibility as a source.

¶ 27    In sum, we find the allegations in the complaint for the search warrant were too general and "bare bones" to establish a connection between the described residence and evidence of criminal activity. Moreover, the only evidence of criminal activity was provided by a source whose reliability was questionable and unverified, and therefore, this evidence did not establish the necessary nexus between the residence and criminal activity.

¶ 28    The dissent correctly observes that Doe provided the *only* reference to criminal activity occurring at the apartment. However, Doe's observation of a single instance of criminal activity, alone, is too "bare bones" to establish probable cause for the issuance of a search warrant. Moreover, even if Doe's observation were probable-cause-worthy, the complaint fails to establish the reliability of Doe's statement. Faced with the lack of reliability evidence, the dissent relies on Doe's personal appearance before the issuing judge as a conclusive indicator of Doe's reliability. The dissent derives its position from a single statement in Doe's affidavit. Doe averred that he "appear[ed] personally before the Judge being asked to issue this Search Warrant and have identified myself to the Judge and indicated my name is fictitious." The text of the warrant, though, rebuts any presumption of reliability attendant to Doe's averred appearance. The warrant states "[u]pon *examination of the written complaint* I find that said complaint on its face states facts sufficient to show probable cause for the issuance of a search warrant" (emphasis added). Thus, Doe may have appeared before the issuing judge, but he provided the judge with no additional information, and this afforded the judge little to no opportunity to make a reliability determination.

13

¶ 29     The dissent supports its reliability based on physical appearance argument with citation to *People v. Hancock*, 301 Ill. App. 3d 786, 792 (1998), which held

> "[w]hen the informant has appeared before the issuing judge, the informant is under oath, and the judge has had the opportunity to personally observe the demeanor of the informant and assess the informant's credibility, additional evidence relating to informant reliability and corroboration by police as discussed in *Illinois v. Gates*, [462 U.S. 213, 238-39 (1983)], is not necessary."

However, the confidential source's appearance in *Hancock* is distinct from the evidence of Doe's appearance. In *Hancock*, the issuing judge "interviewed the confidential source before issuing the search warrant." *Id.* at 790. This interview scenario permitted the issuing judge to assess the reliability of the source's information by posing questions to the source and observing the source's verbal and physical responses. In contrast to *Hancock*, when Doe appeared before the issuing judge, he only told the judge that his name was fictitious. The record contains no indication that Doe provided any additional information about the apartment, observed criminal activity, or his assistance in other police investigations.

¶ 30     Even if we assume that Doe's appearance included a level of interaction that is similar to *Hancock*, the instant complaint included far fewer allegations of criminal activity than the complaint in *Hancock*. In that case, the confidential source provided corroborated information to the police regarding an ongoing narcotics investigation at defendant's residence, participated in two controlled narcotics buys from defendant, and during a visit to defendant's residence, had a conversation with defendant about the purchase and delivery of cocaine and observed several firearms in the residence. *Id.* at 789-90. In contrast, Doe's statement of criminal activity was derived from a single visit, included Doe's unverified identification of a bagged substance as

14

heroin, and included no controlled buys. Therefore, assuming for the sake of argument that Doe provided reliable information of criminal activity occurring at the apartment, this information, by itself, was too bare bones to establish probable cause for the issuance of a search warrant.

¶ 31                                D. Good-Faith Exception

¶ 32        The State argues that if we find the complaint for the warrant to be insufficient, then the good-faith exception to the exclusionary rule applies and permits the State to use the evidence seized at the scene.

¶ 33        The good-faith exception allows the State to avoid the exclusion of evidence that is obtained pursuant to an invalidated warrant. *People v. LeFlore*, 2015 IL 116799, ¶ 25. Generally, there "is no constitutional right to have the evidence resulting from an illegal search or seizure suppressed." *Id.* ¶ 22. The exclusionary rule is limited "to those 'unusual cases' where it can achieve its sole objective: to deter future fourth amendment violations." *Id.* (quoting *United States v. Katzin*, 769 F.3d 163, 170 (3d Cir. 2014)). For the exclusionary rule to apply, the deterrent benefit of suppression must outweigh the social costs of requiring a court to ignore reliable trustworthy evidence that bears directly on the determination of an individual's guilt or innocence. *Id.* ¶ 23. The good-faith exception to the exclusionary rule applies where the circumstances of a case show that the police acted with an " 'objectively "reasonable good-faith belief' that their conduct [was] lawful' " or when their conduct involved only simple, isolated negligence, so that there is no illicit conduct to deter. *Katzin*, 769 F.3d at 171 (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011), quoting *Leon*, 468 U.S. at 909).

¶ 34        Here, the complaint alleged, in relevant part, that an unknown individual possessed what Doe believed to be heroin, based on Doe's unspecified prior experience, at the location described in the complaint. These allegations were so generic and lacking in any indicia of reliability that

15

the officers who executed the search warrant could not have reasonably believed that the warrant was valid. As a result, the good-faith exception does not apply to the instant facts. To validate a search that is based on the minimal amount of information stated in the complaint in this case would undermine the probable cause requirement of the fourth amendment and render the exclusionary rule obsolete. More succinctly, the exception would swallow the rule.

¶ 35                                    E. Motion to Add Authority

¶ 36        In reaching our conclusion, we grant the State's motion to add our supreme court's recent decision in *Manzo* as authority. As indicated by our discussion of the law, we have reviewed *Manzo* and applied the relevant sections to this case. Like *Manzo*, 2018 IL 122761, ¶ 61, Campos's complaint for the warrant failed to establish a nexus between the described location and criminal activity. Accordingly, we find that the reviewing judge did not err in granting defendants' motions to suppress evidence.

¶ 37                                    III. CONCLUSION

¶ 38        The judgment of the circuit court of Will County is affirmed.

¶ 39        Affirmed.

¶ 40        JUSTICE CARTER, dissenting:

¶ 41        I respectfully dissent from the majority's affirmance of the circuit court's order granting defendants' motions to quash the search warrant and suppress evidence. I would find that the complaint for the warrant alleged sufficient probable cause to believe that criminal activity was occurring at the described location.

¶ 42        At the outset, I note that the majority affords the issuing judge's decision to sign Campos's complaint and issue the warrant little deference. The warrant-issuing judge's decision is entitled to deference, and we, as a court of review, must avoid conducting a *de novo* review of

16

the issuing judge's probable cause determination. *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984). In other words, we must not substitute our judgment for that of the warrant-issuing judge but must decide the narrow question of whether the issuing judge had a substantial basis for finding that probable cause existed. *McCarty*, 223 Ill. 2d at 153.

¶ 43   In this case, Campos applied for a warrant to search a location—an apartment. Campos's complaint provided a detailed description of the apartment that included the physical address, appearance of the apartment, and location of the apartment within the building. From this information, I would first find that the complaint sufficiently described the subject of the search warrant. Importantly, the complaint did not seek a warrant to search a person, and therefore, it did not need to describe in detail the unknown black male that Doe said resided in the apartment and possessed the heroin.

¶ 44   Next, I would find that the complaint alleged sufficient probable cause to believe that criminal activity had occurred at the described apartment and evidence of that activity was located in the apartment. Doe told Campos that he had observed evidence of and an individual involved in narcotics-based offenses at the apartment. Specifically, Doe saw an unnamed black male possess multiple plastic bags of heroin inside the apartment. The black male indicated to Doe that the heroin was his and that he sold heroin. Doe also knew that the black male had resided in the apartment for the last month. I would find that Doe's statements were sufficient and enough to cause a person of reasonable caution to believe that the law was violated and evidence of the violation was located in the apartment. See *Griffin*, 178 Ill. 2d at 77. In other words, Doe's statements provided the nexus between the apartment, evidence of narcotics and associated contraband, and the criminal offenses of unlawful possession of a controlled

17

substance and unlawful possession of a controlled substance with intent to deliver that was needed for the warrant to issue.

¶ 45    The majority's affirmance relies, in part, on the lack of direct evidence of Doe's credibility and reliability as a confidential source. Despite the majority's doubts, from my review, I would find that the record readily established Doe's credibility and reliability where Doe averred that he personally appeared before the warrant-issuing judge. See *Hancock*, 301 Ill. App. 3d at 792. Doe's personal appearance allowed the issuing judge to observe Doe's demeanor and assess Doe's credibility. See *id.* This allowed the judge to determine if Doe's statements were credible and reliable in much the same way that the fact finder assesses a witness's credibility at trial. See, *e.g.*, *People v. Bradford*, 2016 IL 118674, ¶ 12. By issuing the warrant, the judge implicitly found Doe's statements to be both credible and a reliable indicator of criminal activity occurring at the apartment.

¶ 46    I am also unpersuaded by Neal's argument that the issuing judge did not find Doe's statements to be reliable because the warrant indicates that the judge relied only on the written allegations. While the warrant states that the issuing judge relied on the written documents to issue the warrant, it does not refute Doe's statement that he personally appeared before the judge. The warrant also does not rebut the presumption of reliability afforded to Doe's statements as a result of his personal appearance. See *Hancock*, 301 Ill. App. 3d at 792. Rather, the statement in the warrant indicates that the issuing judge impliedly found Doe's statements to be reliable because they provided the only probable cause for the issuance of the warrant.

¶ 47    The majority tends to rely on the fact that the complaint itself discredited Doe where it noted that Doe had been charged with several crimes of dishonesty. While I agree with the majority's characterization of these criminal charges as crimes of dishonesty, I find that they do

18

not discredit Doe's statements as a confidential source. First, the complaint alleged that Doe had several criminal charges, not convictions, and the Illinois Rules of Evidence generally only permit the use of convictions to impeach a witness's credibility. See Ill. R. Evid. 609(a) (eff. Jan. 1, 2011) (providing for the use of "evidence that the witness has been *convicted* of a crime" to impeach a witness's testimony (emphasis added)). Consequently, the charges have no legal effect on Doe's credibility. Second, these convictions have little practical impact on Doe's credibility as a confidential source. A confidential source usually has some prior involvement in illicit activities, and it is this involvement that makes the source reliable. For example, in this case, the complaint indicated that Doe had familiarity with the appearance of heroin and could identify heroin by its texture, color, and odor. Doe also had prior arrests for unspecified drug offenses. Together, these statements indicated that Doe could reliably identify heroin. Moreover, the complaint indicated that Doe had provided the information in consideration for apparent lenience in a pending criminal case. As a result, Doe had significant motivation to provide credible information to the police. Consequently, I would find that Doe's prior criminal charges do not diminish Doe's credibility as a confidential source and, instead, enhance the reliability of his statements.

¶ 48 Even if I found that the underlying complaint and affidavits were insufficient to support the issuance of the warrant, I would find that the warrant-executing officers acted in good faith and, therefore, the exclusionary rule does not apply. The record establishes that the officers who executed the search warrant acted with objective good faith, as they first obtained a warrant for the search and executed a search that was within the scope of the warrant. See *Leon*, 468 U.S. at 921. Only after the officers executed the search did the reviewing judge determine that the warrant was based on insufficient probable cause. As a result, I would find that there was no

19

illegal police activity to justify the application of the exclusionary rule and the good-faith exception applied. See *id.*

¶ 49    In summary, I would find that Doe's personal appearance and the issuing judge's implicit credibility finding established sufficient probable cause to believe that evidence of unlawful possession of a controlled substance and unlawful possession of a controlled substance with intent to deliver was located at the apartment. Accordingly, I would reverse the reviewing court's order granting defendants' motions to quash the search warrant and suppress evidence.