2021 IL App (2d) 210019-U
No. 2-21-0019
Order filed September 21, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19-CF-2392 |
| ERIC M. GALARZA, | ) ) | Honorable Charles E. Peterson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Bridges concurred in the judgment.
Justice Brennan dissented.

**ORDER**

¶ 1    *Held*:   The trial court's decision granting defendant's motion to suppress is affirmed.

¶ 2    Following a search of his residence pursuant to a warrant, defendant, Eric M. Galarza, was charged with unlawful possession of a controlled substance with intent to deliver (720 ILCS 5/24-1.1(a) (West 2018)) and unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2018)).   Thereafter, the trial court granted defendant's motion to quash his arrest and suppress evidence and denied the State's motion to reconsider.   The State filed a certificate of impairment and timely appeals.   For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On November 29, 2019, at the address of 818 Ollie Court #3D, Carpentersville, police executed a search warrant and seized evidence of controlled substances and firearms. Defendant was arrested at the scene.

¶ 5      The application for search warrant consisted of four pages. First, the complaint for search warrant, prepared by Officer Ian Abrahamsen as complainant, stated in relevant part that, on oath or information, he had reasonable grounds to believe that, "on or about within three days of November 29, 2019," certain offenses were committed at the Ollie Court address. Abrahamsen stated that he believed that a search of that address and/or defendant's person would result in evidence of the offenses. The complaint expressly incorporated Abrahamsen's affidavit, bore his signature, reflected that it was "[s]igned and sworn to before" Judge Julia Yetter on November 29, 2019, and Judge Yetter's signature also appeared on the document.

¶ 6      Abrahamsen's affidavit comprised the next two pages of the warrant. The affidavit averred that Abrahamsen is an officer assigned to the Carpentersville Police Department's gang and drug unit and that he requested a search warrant based, in part, on the fact that he "was contacted by John Doe of his own free[ ]will and he offered information to me about *** [defendant] ***. All of the information that John Doe related to me is contained in his/her affidavit." Abrahamsen noted that defendant was on parole and mandatory supervised release at 818 Ollie Court, #3D in Carpentersville for cocaine-related offenses. With respect to John Doe, he explained that Doe supplied information freely and without coercion; moreover, during the year 2019, Doe provided information leading to five arrests on drug-related felonies and misdemeanors. The bottom of the affidavit's first page bore Judge Yetter's initials, and the second page bore Abrahamsen's

signature, a notation that it was "reviewed and approved as to content and form signed and sworn to before me" on November 29, 2019, and Judge Yetter's signature.

¶ 7    The fourth page of the search warrant, signed by John Doe, was undated and stated:

> "For the purposes of the affidavit, I am using the name John Doe. John Doe is not my real name.
>
> I, John Doe, went to the residence of 818 Ollie Ct #3D approximately 2 days ago. In the residence of 818 Ollie Ct #3D I was given cocaine by a male Hispanic I know as [defendant]. When I walked in, [defendant] brought me to a bedroom where I saw a plate with about 3 lines of cocaine. I also saw a bag with about 6 other big balls of cocaine in plastic wrapping. I knew these items to be cocaine because I have purchased and used cocaine in the past. [Defendant] told me he sells cocaine but not in small amounts. I left the residence shortly after that."

There are two copies of Doe's statement in the record, one of which bears, on the bottom of the page, Judge Yetter's initials.

¶ 8    On August 19, 2020, defendant moved to quash the arrest and suppress all recovered evidence on the basis that the search warrant lacked probable cause. In part, defendant argued that Doe's purported affidavit was unsworn, and nothing reflected that Doe appeared before Judge Yetter. Defendant further argued that Doe's affidavit was undated, rendering an observation that Doe observed cocaine "two days ago" of limited probative value and the warrant "stale" and unsupported by probable cause.

¶ 9    On October 22, 2020, the court held a hearing on defendant's motion. Officer Abrahamsen testified that he has been a police officer for five years, has been assigned to the gang and drug unit for two years, and has previously obtained six warrants. Abrahamsen testified that he prepared

the complaint and search warrant for Judge Yetter's review and signature. In addition, he explained, another affidavit was prepared under the alias John Doe. When Abrahamsen met with Judge Yetter on November 29, 2019, he presented the complaint, his affidavit, and Doe's "affidavit" for her consideration. He met with Judge Yetter in person and signed the complaint in her presence and while under oath. When the State asked whether anyone else had been present, Abrahamsen agreed that John Doe was also there. Specifically, according to Abrahamsen, Doe was placed under oath by Judge Yetter, Doe answered the judge's posed questions, and, while under oath and before the judge, Doe signed and swore to the accuracy of the document.

¶ 10     On cross-examination, Abrahamsen agreed that the complaint, affidavit, and a police report he later prepared never mentioned that Doe personally appeared before Judge Yetter. The first time that Abrahamsen mentioned that Doe was present before Judge Yetter was on September 28, 2020, during a meeting with the assistant State's Attorney to prepare for the motion-to-quash hearing. In addition, Abrahamsen testified that Doe received payment for his or her cooperation, information which also does not appear in the search-warrant documents or police report. Although Abrahamsen testified that he has previously worked with Doe, he testified that he did not know Doe's criminal history.

¶ 11     On November 3, 2020, the court issued a written order, granting defendant's motion. It found that neither Abrahamsen's complaint, nor his affidavit, stated *when* Doe contacted him. Doe's affidavit, in turn, was undated. Moreover, Doe's affidavit did not specify either when he allegedly saw the drugs or contacted Abrahamsen. Rather, Doe's affidavit claimed only to have seen cocaine at the residence "approximately two days ago." In addition, Doe's "affidavit" did not reflect that it was sworn and signed by him under oath before Judge Yetter, or even state when he signed it. The court further stated, "I cannot find that John Doe was present before Judge Yetter

nor that he was sworn or testified to the contents of his affidavit including a date when he saw the drugs at the stated residence. Without Doe's affidavit, there [wa]s no probable cause to support the search warrant request. Without the date, there [wa]s no defense to the staleness argument."

¶ 12    On December 1, 2020, the State moved the court to reconsider. It argued that the court incorrectly found the warrant stale, due to the lack of dates in the affidavits. Further, the State argued that the court's finding that there was no indication that Doe swore to the contents of the statement was unsupported by the evidence, because Abrahamsen's unrebutted testimony was that Doe had been present, placed under oath, and testified before Judge Yetter. As such, the State asserted, Judge Yetter had assessed Doe's credibility and the trial court improperly substituted Judge Yetter's findings with its own.

¶ 13    On December 21, 2020, the court rejected the State's arguments. It noted that its staleness ruling concerned the fact that the warrant provided no frame of reference for when Doe was inside the subject premises and saw cocaine. Noting the requirement that a warrant must issue based on probable cause supported by oath or affirmation, the court explained that nothing within the "four corners" of the warrant reflected that Doe was sworn or present and testified under oath before Judge Yetter. Indeed, the court noted, unlike Abrahamsen's affidavit, Doe's affidavit did not contain the same "subscribed and sworn" language or judicial signature, nor had the court heard any evidence or explanation as to why Doe's affidavit was undated.

¶ 14    On January 15, 2021, the State filed a certificate of impairment and notice of appeal.

¶ 15                                    II. ANALYSIS

¶ 16                                    A. Suppression

¶ 17    The State argues first that the trial court erred in granting defendant's motion to suppress for three overarching reasons: (1) in total, the search warrant provided probable cause to believe

that defendant, who was on parole for manufacture and delivery of cocaine, unlawfully possessed and was selling cocaine; (2) the court failed to give any deference to the issuing magistrate; and (3) defendant's status as a parolee and his accompanying diminished expectation of privacy rendered the search here reasonable. The State urges that, even if we consider this case "doubtful or marginal," the preference to be accorded search warrants requires the warrant here to be upheld as valid.

¶ 18    The trial court's ruling on a motion to suppress presents questions of both fact and law. *People v. Manzo*, 2018 IL 122761, ¶ 25. We review with deference the court's findings of fact on the motion, reversing them only if they are against the manifest weight of the evidence. *Id.* Upon accepting the court's factual findings, we review *de novo* whether, based upon those facts, suppression was appropriate. *Id.*

¶ 19    The fourth amendment to the United States Constitution, made applicable to state officials through the fourteenth amendment to the United States Constitution, provides:

>  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and *no Warrants shall issue, but upon probable cause, supported by Oath or affirmation*, and particularly describing the place to be searched, and the persons or things to be seized." (Emphasis added.) U.S. Const., amend. IV.

The search and seizure clause of the Illinois Constitution, which is to be interpreted in lockstep with the fourth amendment (see *People v. Tisler*, 103 Ill. 2d 226, 245 (1984)) also provides, " *** *no warrant shall issue without probable cause, supported by affidavit* particularly describing the place to be searched and the persons or things to be seized." (Emphasis added.) Ill. Const. 1970, art. I, § 6.

¶ 20    A detached judicial officer must resolve whether probable cause exists to justify issuing a warrant. *Manzo*, 2018 IL 122761, ¶ 29. Whether probable cause exists depends on the totality of the circumstances and facts known to the officers and court when the application for warrant is submitted and whether those facts and circumstances within the affiant's knowledge are sufficient to warrant a person of reasonable caution to believe that the law was violated and evidence of it is on the premises to be searched. *Id.* "It is the probability of criminal activity, rather than proof beyond a reasonable doubt, that is the standard for determining whether probable cause is present." *Id*. The existence of the necessary probability should be evaluated by commonsense considerations, not technical rules. *Id.* ¶ 30. In construing an affidavit, a reviewing court does not substitute its judgment for that of the magistrate; instead, it must decide only whether the magistrate had a substantial basis for concluding that probable cause existed. *Id*. ¶ 31. Moreover, in determining whether an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to the warrants. *Id.* A sworn complaint supporting a search warrant is presumed valid. *Id.* ¶ 32.

¶ 21    Remaining mindful that a magistrate may draw reasonable inferences from the information provided in a search warrant application and that doubtful or marginal cases should be determined by the preference to be accorded warrants, we nonetheless find that the sworn complaint and accompanying documents here did not provide Judge Yetter, the issuing magistrate, a substantial basis to conclude that probable cause for the warrant existed. First, there was no information supporting when the crime was committed, such that evidence thereof could reasonably be expected to remain in the residence. Indeed, sufficient information must be presented to the magistrate to allow him or her to determine probable cause without merely ratifying the bare conclusions of others. *Id.* ¶ 35. While the State is correct that the complaint here averred that

Abrahamsen had reasonable grounds to believe that, "on or about within three days of November 29, 2019" an offense had been committed, that belief was premised upon *other* information that, ultimately, lacked support. Specifically, Abrahamsen's complaint assertion concerning recency of the alleged crime referenced his own affidavit, which explained that his reasonable belief of the crime was premised on information from Doe, a reliable informant, who came to him freely and offered him the information contained in Doe's affidavit. Notably, Abrahamsen's affidavit does *not* say when Doe approached *him*. Doe's affidavit, in turn, explained what he allegedly witnessed "two days ago." But, two days ago from *when*? Doe's statement does not allege any specific dates, either concerning when he saw the cocaine at the Ollie Court address or when he approached Abrahamsen.

¶ 22    In *People v. Holmes*, 20 Ill. App. 3d 167 (1974), the appellate court upheld the trial court's suppression of a warrant for lack of probable cause, where the complaint and warrant lacked a date for the alleged offense. *Id.* at 171-72. There, the State conceded that the complaint and warrant omitted the date of the armed robbery prompting the request for the warrant, but it argued that: (1) since the complaint for the search warrant was drafted in the present tense, the issuing judge could have inferred that the crime had occurred in the recent past; or (2) alternatively, that the complaint's reference to another armed robbery that occurred 37 days prior to the request for and issuance of the search warrant was sufficient to constitute probable cause. The court rejected the present-tense argument, noting:

> " 'The present tense is suspended in the air; it has no point of reference. It speaks, after all, of the time *** which could have been a day, a week, or months before the date of the affidavit. To make (an inference) that the undated information speaks as of a date close to that of the affidavit and that therefore the undated observation made on the strength

of such information must speak as of an even more recent date would be to open the door to the unsupervised issuance of search warrants on the basis of aging information. \*\*\*' "

*Id*. at 170 (quoting *Rosencranz v. United States*, 356 F.2d 310, 316-17 (1966)).

The court next rejected the State's argument that the complaint's reference to the same offense happening 37 days earlier sufficed to establish probable cause, noting that the warrant did not concern a continuing crime or course of conduct and that, while there was no strict rule about passage of time, "it is axiomatic that the shorter the interval in time, the more likely a conclusion of probable cause will be sustained." *Holmes*, 20 Ill. App. 3d at 171; see also *People v. Jones*, 2020 IL App (3d) 170674, ¶ 23 ("[t]he doctrine of staleness prevents law enforcement from relying upon old or outdated information in establishing probable cause" and "[w]here simply no information is provided regarding when an activity took place \*\*\* neither this court nor any other court is able to conduct a staleness analysis"); *People v. Damian*, 299 Ill. App. 3d 489, 492-94 (1998) (probable cause lacking where there was no indication that the confidential informant appeared before the magistrate and where the information was stale, as six weeks passed between the allegations and request for the warrant).

¶ 23    Here, we acknowledge that the State does not raise a "present-tense" argument, but we find still applicable the notion that, without a date identifying when the alleged offense occurred, there is nothing to ground the allegations; there is no point of reference for when Doe saw the alleged crime.  Merely stating "two days ago" is insufficient, because, where Doe's statement itself is undated, that phrase within the statement could still reference weeks, months, or even years earlier. Abrahamsen's assertion that the crime happened within three days of November 29, 2019, was entirely based upon his own affidavit, which was based on Doe's statement, which might have constituted aged information.  Further, none of the information contained in the warrant specifies

*when* Doe's observations occurred, Doe's statement is undated, and critically here, nothing even reflects when Doe approached Abrahamsen. Thus, like in *Holmes*, the information here provides no reasonably specific clues as to when the crime occurred, nor even the date when the information was received, and, accordingly, the probable cause finding is based on assumptions, rather than reasonable inferences. See *Jones*, 2020 IL App (3d) 170674, ¶ 25 (noting the distinction between inferences and assumptions). We note also that the State tries to raise a similar alternative argument to that raised in *Holmes*, namely, that the issuing judge could have found probable cause based on a continuing course of conduct, since Abrahamsen's affidavit referenced that defendant was paroled for similar offenses. However, Abrahamsen's affidavit specified only that defendant's mandatory supervised release started *eight months* prior to the warrant application; the underlying offenses obviously occurred prior thereto and not necessarily even at the same address. As such, we are not convinced that there existed sufficient information for the magistrate to alternatively find the required recency or a continuing course of conduct to support probable cause for this warrant. Therefore, we disagree that the trial court improperly read the warrant in a hyper-technical manner. While the complaint alleged there was reason to believe that an offense was committed around three days before November 29, 2019, the underlying documents or information upon which that statement was based simply did not support the assertion.

¶ 24 Second, as explained above, both the federal and state constitutions require that a warrant issue upon probable cause supported by oath, affirmation, or affidavit. On its face, Doe's statement here was unsworn. See, *People v. Dinger*, 106 Ill. App. 3d 662, 665 (1982) (unsworn affidavit from a John Doe complainant should not have been considered in the probable-cause determination). As such, the State emphasizes Abrahamsen's testimony that Doe appeared before Judge Yetter, signed the "affidavit" under oath, and answered her questions. This is relevant

because, if Doe was present and sworn on November 29, 2019, it could "ground" the allegations that Doe witnessed the crime "two days ago," *i.e.*, two days prior to November 29, 2019. The State contends that we should presume that Doe provided Judge Yetter with all relevant information to support the warrant and that we must, therefore, defer to Judge Yetter's inherent credibility findings. However, as the trial court noted, although Judge Yetter's initials appear on the bottom of Doe's affidavit, supporting that she reviewed it, nothing documents that Doe appeared before her. Indeed, Judge Yetter made several notations on the warrant documents, including her signature, dates, and initials, yet she did *not* note that Doe was present and sworn before her, nor is there any notation reflecting Doe's answers to her allegedly posed questions. Given the judge's inclination to make notations on the documents, it is not unreasonable to infer that, had Doe been present, a notation would have been made.

¶ 25     The State insists that, where Abrahamsen's testimony that Doe was present was unrebutted and the court did not explain why it found his testimony not credible, the court's finding that Doe was not present and his information was unsworn is "perplexing" and against the manifest weight of the evidence. The State asserts that the court substituted its own judgment for that of the magistrate, who was in a better position to judge the reliability and credibility of the affiants, and "any ambiguity of whether Doe had sworn to the contents of his [or her] affidavit or when Doe observed defendant with drugs and [*sic*] are the exact type of issue that the issuing magistrate would have clarified before issuing the warrant." It concludes, "the trial court gave no deference to the issuing magistrate who presumably cured any defects with Doe's affidavit when Doe appeared before her." We disagree.

¶ 26     Preliminarily, the State provides no authority that, because no *other* witness testified to the contrary, the court was required to find credible Abrahamsen's unrebutted testimony on every

point or expressly state why it did not believe him.[1]  Further, while the trial court did not expressly state that Abrahamsen lacked credibility on this point, it is clear to this court that it found Abrahamsen's testimony concerning Doe's presence insufficient, in light of the totality of the evidence.  Indeed, the court's reasoning for finding Abrahamsen's testimony on this point not credible was implicit in its findings that there was no notation anywhere on the warrant that Doe *was* present, particularly, again, when Judge Yetter was inclined to make other notations on those documents.  The State wishes the trial judge and this court to defer to Judge Yetter's findings, yet the entire point is that she did not make a finding that Doe appeared before her.  Other evidence supporting the court's finding that Doe was not present included Abrahamsen's own testimony on cross-examination that he did not document Doe's alleged presence anywhere in the warrant application or the police report or even mention Doe's presence until preparations with the State for the motion hearing.  Also touching on overall credibility is evidence that, although Abrahamsen's warrant application attests that Doe was reliable and came to him freely and voluntarily, the court learned at the hearing that Abrahamsen did not know Doe's criminal history and, in fact, Doe was also paid for the offered information.  Collectively, the record reflects that, after reviewing both the warrant documents and hearing testimony, the trial court could not find that Doe was present and sworn before Judge Yetter and had answered her questions (again, which questions were asked and Doe's supposed answers were not specified at the hearing) in such a

---

[1] We note that, short of requiring Judge Yetter to testify at the motion-to-suppress hearing, it is not clear who else defendant could have presented to "rebut" Abrahamsen's testimony that Doe was present.  Indeed, defendant could not call Doe, as his or her identity to defendant is unknown.

manner that might have cured the "staleness" issue, where no notation reflecting his presence and answers was made anywhere on the warrant or at any time prior to hearing preparations.

¶ 27    Finally, we note that the State contends that, had Abrahamsen merely copied and pasted the hearsay information from Doe's affidavit into his own affidavit, defendant's argument would be moot because there would have been no obligation to bring Doe before the issuing magistrate. This is a red herring. Abrahamsen had no personal knowledge of the events, and his allegations were totally dependent on the information provided by Doe, which included no date reflecting when the alleged observations purportedly occurred or when Doe spoke with Abrahamsen, thus not supporting a finding of probable cause. Indeed, we disagree that simply pasting the information from Doe's statement into Abrahamsen's affidavit would have cured the issue. Under the facts here, we still would be left with Abrahamsen swearing that he believed that, within three days of November 29, 2019, a crime took place at the Ollie court address because on an unidentified date he was voluntarily approached by a paid John Doe, who had helped police in the past but whose criminal history he did not know, who told him that within two days of an unspecified date he saw cocaine there. Thus, setting aside Doe's affidavit, the complaint would have still lacked any specificity as to when the crime occurred. In sum, the trial judge's finding of fact that Doe did not appear before the Judge Yetter was not against the manifest weight of the evidence.

¶ 28    We also note that we find unpersuasive the State's allegations that the trial court improperly justified its decision on the holdings in *People v. Pruitte*, 2019 IL App (3d) 180366 (because the confidential informant there was unreliable), and *Jones*, 2020 IL App (3d) 170674 (because the multiple transactions there failed to establish a nexus to the searched residence). We need not delve into the factual distinctions between those cases and the present case. The trial court

essentially relied on those cases for the basic overarching principles that information from a confidential informant must be reliable, sworn, specific and not stale, principles which are not themselves in dispute here.

¶ 29    Finally, as an additional basis for arguing that the court erred in its ruling, the State notes that defendant was on mandatory supervised release at the time that Abrahamsen sought the search warrant at issue.  The State asserts that defendants on parolee status have a severely diminished expectation of privacy, noting that a condition of every parole and mandatory supervised release is that the subject "consent to a search of his or her person, property, or residence under his or her control" (see 730 ILCS 5/3-3-7(a) (West 2018)), and that this condition may be applied to uphold a warrantless search of a parolee's residence (see *People v. Wilson*, 228 Ill. 2d 35, 52 (2008)). According to the State, defendant had been released from prison for cocaine-related crimes only eight months prior to the search warrant's issuance.  Therefore, the State urges,

> "Given the diminished expectation of privacy afforded to parolees, the statutory requirement that they consent to searches of their person and residence, the fact that defendant had previously been convicted of dealing cocaine, and defendant's statement to Doe that he sells cocaine but not in small amounts, the People submit that defendant was engaged in a continuing course of criminal conduct.  Thus, even without an exact date as to when Doe observed defendant with cocaine, Doe's information was not stale and probable cause existed to support the issuance of the search warrant."

¶ 30    The problem with the State's argument, as defendant notes, is that the State did not raise it below.  Arguments not raised before the trial court are generally forfeited on appeal.  See, *e.g.*, Ill. S. Ct. R. 615 (eff. Jan. 1, 1967); *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).  The principle that issues not raised in the trial court are generally waived on appeal applies to the State as well as to

the defendant in a criminal case. See *People v. Holloway*, 86 Ill. 2d 78, 91 (1981). The State suggests that it could not have forfeited this argument because Abrahamsen's affidavit noted that defendant was on mandatory supervised release and, so, Judge Yetter might have considered that fact. Frankly, then the State should have made that argument to the trial court. We disagree that the presence of a fact on a document equates to the State raising an argument. It is important that a party raise specific issues at trial and in a posttrial motion so that the trial court has an opportunity to correct the claimed error. *People v. Hope*, 184 Ill. 2d 39, 45 (1998). While it is true that forfeiture is a limitation on the parties, not the court (see, *e.g.*, *People v. Sophanavong,* 2020 IL 124337, ¶ 21), we would not be the first court to find forfeiture in similar circumstances. In *People v. Vasquez*, 388 Ill. App. 3d 532, 543 (2009), the court found forfeited the State's argument, raised only on appeal, that the defendant's parolee status and accompanying diminished expectation of privacy justified an investigatory stop and vehicle search. The court also noted that, while it did not need to address the argument, the State had also not presented the trial court with evidence, such as certified copies of conviction or parole conditions, to establish the defendant's status as a convicted felon, so as to allow the trial court or appellate court to even properly consider that status. *Id.* Here, the same is true. While Abrahamson's complaint mentioned that defendant was on parole and mandatory supervised release, the trial court was never presented with the opportunity to uphold the warrant based on the argument the State now raises, nor was the evidence required to substantiate that argument made part of the record. As such, we uphold the State's forfeiture.

¶ 31 In sum, there was no substantial basis to conclude that probable cause existed to believe that evidence of crimes would be found in a search of the Ollie Court address, where there was insufficient information to discern when the alleged crime was witnessed and, further, where the

evidence did not establish that the witness's testimony was presented under oath, affirmation, or by sworn affidavit. As such, the search warrant in this case was not supported by probable cause and was thereby invalid. Therefore, the trial court did not err in granting defendant's motion to suppress.

¶ 32                              B. Good Faith

¶ 33    The State argues that, to the extent this court rejects its other arguments, we should conclude that suppression is not the appropriate remedy because the officers executed the search warrant in good faith.

¶ 34    The good-faith exception to the exclusionary rule allows the State to avoid exclusion of evidence obtained pursuant to an invalidated warrant, when the evidence would otherwise be admissible and was seized in good faith. See, *e.g.*, *Manzo*, 2018 IL 122761, ¶¶ 63-64. The State notes that an officer's decision to obtain a search warrant is "*prima facie* evidence that he [or she] was acting in good faith." See *United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003). It argues that it would be unreasonable for Abrahamsen to have assumed that the "technical" missteps of omitting from the warrant application when Doe contacted him and submitting from Doe unsworn information would completely invalidate the warrant. Moreover, the State notes that a defendant has no constitutional right to have the fruits of an illegal search suppressed; rather, the exclusionary rule seeks to deter future fourth-amendment violations. See *People v. LeFlore*, 2015 IL 116799, ¶ 17.

¶ 35    Defendant argues that the State's argument is forfeited, as it never raised the good-faith exception before the trial court. In its reply brief, the State acknowledges that it raises the good-faith-exception argument for the first time on appeal. However, it requests that we review the

argument for plain error, and it again notes that forfeiture is a limitation on the parties, not the court.

¶ 36    We decline to review this issue for plain error and honor the forfeiture. As the State's cited authority notes, review under the plain-error doctrine may, at the appellate court's discretion, be invoked when an error has been committed that affects a substantial right of the State. See *People v. Oswald*, 106 Ill. App. 3d 645, 649 (1982) (applying plain error to review the State's forfeited argument because the issue was one of law concerning the construction of a statute, the alleged error did not arise until the entry of judgment dismissing the charges, and the trial judge had determined that the statute authorized the challenged orders); *People v. Knop*, 199 Ill. App. 3d 944, 949 (1990) (relying on *Oswald* to note that the appellate court has discretion to review the State's forfeited contentions under the plain-error doctrine, which may be warranted where the issue is one of law concerning the construction of a statute).

¶ 37    This case does not concern a purely legal issue. Moreover, we note that, in *People v. Bowden*, 2019 IL App (3d) 170654, ¶¶ 14-21, a case involving a trial court's findings when granting a motion to suppress, the appellate court rejected the State's request for plain-error review of a forfeited argument. The court, noting the dearth of cases addressing a request for plain-error review made by the State in a criminal appeal, reiterated that, to invoke plain-error review, the alleged committed error must affect a substantial right of the State. *Id.* ¶ 17. The court distinguished the State's cited caselaw, including *Oswald*, and disagreed that the State had established that it possessed a substantial right to "completely try" a defendant. *Id.* ¶¶ 17-21. The court concluded that the State's argument for plain-error review was unpersuasive and that its argument remained forfeited. *Id.* ¶ 21.

¶ 38    We, too, find the State's request for plain-error review unpersuasive. Indeed, the State does not even directly identify what "substantial right" has been jeopardized. It broadly asserts that it has a right to protect the public from criminal offenses, supervise parolees, and monitor recidivism, but none of those broad rights persuade us that the State has established a substantial right to raise an argument in this case concerning the good-faith exception to the exclusionary rule, where we have determined that the warrant was properly quashed for lacking probable cause. Thus, the State has forfeited the issue for our review.

¶ 39                                III. CONCLUSION

¶ 40    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 41    Affirmed.

¶ 42    JUSTICE BRENNAN, dissenting.

¶ 43    The majority holds that the circuit court did not err when it granted defendant's motion to quash the search warrant and suppress evidence. In reaching this conclusion, the majority deems the search warrant deficient for not providing a basis to ascertain the timing of the criminal conduct being investigated, such that the warrant is stale. I respectfully dissent.

¶ 44    As the majority acknowledges, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). It is the probability of criminal activity, rather than proof beyond a reasonable doubt, that is the standard for determining whether probable cause is present. *Tisler*, 103 Ill. 2d at 236 (1984). Whether probable cause exists in a

particular case turns on the " 'totality of the circumstances and facts known to the officers and court when the warrant is applied for." *People v. Free*, 94 Ill. 2d 378, 400 (1983).

¶ 45    The reviewing court may not substitute its judgment for that of the issuing magistrate, but must instead decide whether the magistrate had a substantial basis for finding that probable cause existed. *Manzo*, 2018 IL 122761, ¶ 31.   A sworn complaint supporting a search warrant is presumed valid.  *People v. McCarty*, 223 Ill. 2d 109, 154 (2006).  The court's review must not be tainted by hindsight but instead should be based upon whether " 'a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense.' " *Tisler*, 103 Ill. 2d at 237 (quoting *People v. Wright*, 41 Ill. 2d 170, 174 (1968)).  Whether the necessary probability exists is governed by commonsense considerations that are factual and practical, rather than by technical rules. *Manzo*, 2018 IL 122761, ¶ 30. Moreover, in determining whether an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases should largely be determined by the preference to be accorded to the warrants.  *People v. Stewart*, 104 Ill. 2d 463, 477 (1984).

¶ 46    In applying the above principles to the warrant at issue, one must first recognize what the majority has and has not concluded. The majority does not question the reliability of John Doe, who, according to Abrahamsen's affidavit for search warrant, "has provided information leading to the arrest of 5 individuals on various drug related felonies and misdemeanors."  Nor does the majority conclude that John Doe's affidavit, incorporated by reference into Abrahamsen's affidavit, is insufficient to establish probable cause that, *at some point in time*, defendant possessed 6 big balls of cocaine wrapped in plastic and three lines of cocaine at his 818 Ollie Ct. residence. Rather, the majority concludes that the warrant lacks probable cause because the complaint and

affidavits in support of the search warrant do not provide a basis to conclude when these events were observed by John Doe.

¶ 47    I agree with the majority that time is a crucial element of probable cause. A valid search warrant may issue only upon allegations of "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210-11 (1932). The relevant time period for determining probable cause is measured from the date of the underlying criminal activity, not when the information was provided to law enforcement. See *United States v. Anderson*, 851 F.2d 727, 729-30 (4th Cir. 1988). This temporal requirement exists because probable cause to search "is concerned with facts relating to a presently existing condition," namely, the presence of evidence of a crime, in a particular place, at the time the warrant is issued. See 2 Wayne R. LaFave, Search and Seizure § 3.7(a) at 338 (3d ed. 1996).

¶ 48    I disagree with the majority that this temporal requirement was not met. In his sworn complaint for search warrant, Abrahamsen avers that "he has reasonable grounds to believe *that on or about within three days of November 29, 2019* in or about 818 Ollie Ct # 3D, Carpentersville, Kane County, Illinois the following offenses were committed ***: UNLAWFUL POSSESSION OF A CONTROLLED SUBSTANCE[.]" (Emphasis added.). The complaint incorporates by reference Abrahamsen's two-page affidavit, also sworn-to before the issuing magistrate, which indicates that "I was contacted by John Doe of his own freewill and he offered information to me about a subject he knows as 'Eric', later identified as Eric Galarza ***. All of the information that John Doe related to me is contained in his/her affidavit." In turn, the attached "affidavit," signed by John Doe, but not dated, provides,

> "I, John Doe, went to the residence of 818 Ollie Ct #3D *approximately 2 days ago*. *** I was given cocaine by a male Hispanic I know as Eric. When I walked in, Eric brought

me to a bedroom where I saw a plate with about 3 lines of cocaine. I also saw a bag with about 6 other big balls of cocaine in plastic wrapping. I knew these items to be cocaine because I have purchased and used cocaine in the past. Eric told me he sells cocaine but not in small amounts. I left the residence shortly after that." (Emphasis added.)

¶ 49 I would conclude that the sworn complaint's statement that Abrahamsen had reasonable grounds to believe the offenses took place "on or about within three days of November 29, 2019," in conjunction with Abrahamsen's affidavit incorporating John Doe's statement that "approximately two days ago" Doe witnessed the offense, was sufficient temporal evidence such that the issuing magistrate properly granted the search warrant. Read together, the documents provided to the magistrate supported the common-sense conclusion that the November 29, 2019, date in the complaint followed from Abrahamsen's conversation with John Doe, where John Doe told him he had observed the contraband in defendant's residence "approximately two days ago." Respectfully, the majority's contrary conclusion results from a hyper-technical reading that the caselaw proscribes. See, *e.g.*, *McCarty*, 223 Ill. 2d at 153-54.

¶ 50 Moreover, assuming for the sake of analysis that the absence of a date in the John Doe affidavit did create temporal uncertainty, one must also consider Abrahamsen's suppression hearing testimony that John Doe swore to the issuing magistrate that his affidavit was true. We know the warrant issued on November 29, 2019. Accordingly, when John Doe swore to the judge that his affidavit was true, he necessarily swore to the judge that he witnessed the contraband "approximately two days ago," *i.e.*, November 27, 2019. To the extent the majority correctly concludes that there was temporal uncertainty in the documents standing alone, John Doe's sworn testimony renders the timing certain.

¶ 51    In holding otherwise, the majority agrees with the trial court's decision to discount Abrahamsen's unrebutted testimony that John Doe swore before the magistrate that his affidavit was true.  Admittedly, Abrahamsen was impeached by omission for the failure to include John Doe's appearance before the magistrate in his police report or to mention the same in earlier conversations with the prosecutor.  He was also impeached by the omission that John Doe was paid for his information.  Finally, there was the absence of any notation by the issuing magistrate that she swore in John Doe, although the magistrate did initial the page that exclusively contained John Doe's statement.  None of this impeachment, however, rendered Abrahamsen's unrebutted testimony implausible.  Nor did the trial court find Abrahamsen incredible. Accordingly, the trial judge's implicit finding that John Doe did not swear to the truth of his affidavit before the issuing magistrate was against the manifest weight of the evidence.

¶ 52    Our review is limited to whether there was a "substantial basis for determining the existence of probable cause." *Gates*, 462 U.S. at 239.  Furthermore, although it may not be easy to determine when an affidavit demonstrates probable cause, doubtful or marginal cases should be resolved in favor of upholding the search warrant. *People v. Beck*, 306 Ill. App. 3d 172, 179 (1999).  Because the search warrant complaint, the accompanying affidavits, and John Doe's sworn testimony fairly demonstrated the probability that contraband would be found at defendant's address at the time the warrant issued, I would reverse the suppression of the warrant and uphold the search.  Accordingly, I respectfully dissent.